[Civ. No. 7084. First Appellate District, Division One.—May 25, 1932.]

S. W. BUSSET, etc., Respondent, v. CALIFORNIA BUILDERS CO. et al., Appellants.

M. G. KENDALL, etc., et al., Appellants, v. S. W. BUSSET, etc., et al., Respondents.

Silverstein & Silverstein for Appellants.

James H. Boyer for Respondent Busset.

John C. Scott for Respondent Clausen.

JOHNSON, J., *pro tem.*—This action was instituted by plaintiff to foreclose a lien claimed for work done by him under a subcontract made March 2, 1928, with M. G. Kendall, operating under the name of the California Builders Co., as the general contractor for the erection of a building for the defendant J. W. Helm, to be used in part for stores and offices, in part for a public garage.

Plaintiff's contract was for the construction of interior walls; and in connection with their answer the defendants filed a cross-complaint against the plaintiff and Frank M. Clausen, who did the plastering under a subcontract made also with the general contractor and dated October 27, 1927.

After hearing the evidence, the trial court decided that the plaintiff Busset was entitled to a decree of foreclosure of the lien claimed, and that the defendants were not entitled to judgment under their cross-complaint against either Busset or Clausen. In due time a motion for a new trial was made by defendants and cross-complainants, which was denied so far as the motion related to Busset, but was granted as to the cross-defendant Clausen. Thereupon a motion was made immediately on behalf of Clausen to dismiss the action as to him, upon the ground that he was not a proper party defendant, and that no cause of action was stated against him in the cross-complaint. That motion was forthwith granted. From the judgment in favor of plaintiff and from the order dismissing the action as to Clausen, the defendants and cross-complainants took this appeal.

The building in question is a four-story concrete office building with a public garage, situated in Oakland. The building was constructed for the owner, Helm, under a contract made by him with M. G. Kendall doing business under the name of California Builders Co., but the contract was not filed with the county recorder. The plans and specifications accompanying that contract called for use of hollow tiles for the interior walls. Instead of using tiles, how-

ever, a contract was made through Kendall with Busset to construct a wall according to a process used by Busset, making what he called a Pacific wall, consisting of a composition of gypsum and rice hulls with water added to give fluidity in pouring. In soliciting the contract, Busset submitted a written offer dated February 3, 1928, in which the so-called Pacific wall is described as composed of one part of aerated stucco, two parts of rice hulls, with sufficient water to allow pouring into forms. Detailed specifications for the construction were embodied in the offer, and a price of $5,000, payable in progressive installments, was named. The offer having been accepted, a written contract was entered into on March 2, 1928, in which Busset agreed to install ''Pacific wall partitions and fireproofing as per tender of Feb. 3, 1928'' for the sum of $5,000, of which $3,400 was to be paid in specified installment payments up to the time of completion of the contract, and a further sum of $1,000 forty days after completion, together with a note for $600, payable in two years with interest at eight per cent and secured by deed of trust executed by the owner of the property. The contract provided that the work was to be done ''in a first class manner, and in accordance with the plans and specifications for the building, complete in every respect, so as to insure a satisfactory job''. Since Busset's work was to conform to the specifications in his tender of February 3d, the reference in the contract to plans and specifications of the building must be deemed to include Busset's specifications as a substitute for those relating to the use of tiles.

The walls were installed by Busset, and the payments falling due up to the time of completion of his contract, and aggregating $3,400, were paid as the work progressed. The residue of the agreed price has not been paid; and a claim of lien having been duly recorded, Busset in this action seeks recovery of the balance of $1600 with interest and costs, and sale of the property in satisfaction of the lien asserted. Judgment in the amount claimed went in Busset's favor, together with decree for foreclosure of the lien.

The defendants alleged in their pleadings that Busset knew that the walls were to be plastered in the usual way, and, when finished by the plasterer, were to be white and clean and free from defects. It is further averred that Bus-

set represented that walls built by his process were better than walls of tile and, when finished, produced a smooth surface capable of receiving plaster applied in the regular way. It is pleaded in addition that after Busset finished his work and the plastering had been done, blotches and discoloration appeared, so that painting became necessary in order to make the walls white and clean and free from defects, the cost of painting being $2,000; and claiming also damages in the sum of $1,000 by reason of delay charged in completion of the building; the defendants by their answer and their cross-complaint against Busset prayed that he take nothing by his complaint and that damages be awarded in favor of defendants and cross-complainants.

As has been stated, the cross-complaint brought in the plasterer, Clausen, as a cross-defendant; but attention will be given first to the controversy over the construction of the wall itself by Busset.

The trial court found, among other things, that the blotches and discolorations complained of were caused by plastering the walls before they had become sufficiently dry; that the plastering was thus done prematurely at the instance and under the direction of the general contractor, Kendall, with knowledge on his part of the moist condition of the walls; and that any damage suffered was caused by such premature plastering done under Kendall's direction. The court further found that there was no negligence on the part of the plasterer; that no delay in completion had been caused by either Busset or Clausen, and that Busset was entitled to the amount of his lien claim. Nothing was allowed to the cross-complainants under the cross-complaint.

The issue as to the construction of the walls and the cause of the blotches and discolorations is one of fact; and since the court found that the defects complained of were due to the circumstance that, under orders of the general contractor or his agents, the walls were plastered while wet, our function is confined to ascertaining whether the record contains evidence sufficient to support such findings. The evidence is not free from conflict; but attention must be centered upon that which, as interpreted by the trial court, sufficed to create a preponderance in favor of Busset.

Complaint about blotches and discolorations appears to be directed mainly to the walls in the stores located on the

ground floor. There was testimony of M. L. Garrison, the superintendent, and Harold A. Probst, the foreman, employed by Kendall, and also testimony of Clausen, the plasterer, that the walls of the building appeared to be dry when the plastering began. On the other hand, Busset's superintendent, George Smith, testified that the work on the walls started early in March and was completed about May 2d; and that about three weeks after the work began, there came rainy weather before the roof was on, in consequence of which the building became wet and the drying of the walls was retarded. The work on the interior walls began on the fourth floor and the rain occurred while work was proceeding on the third floor. At that time Smith and Garrison had a discussion concerning the slowness of the drying, and Garrison put some heaters in the upper stories. The walls on the two upper floors were completed before any plastering began. As the plasterer worked upstairs, Busset proceeded to pour his walls on the lower floors; and when he reached the ground floor, which was divided into stores, Smith said that not more than ten days intervened between the completion of any of the walls in the stores and the plastering thereof, and that some of those walls were plastered within two days after being poured. He said also that there was no artificial heating on the ground floor and that when he himself admonished Garrison that it was wrong to plaster the walls at that time, Garrison replied "We have got to get that building finished. We can't wait for these walls." In the testimony of Kendall's foreman, Probst, it appears that he also told the plasterer "to get his plaster on as soon as he could".

In like manner with Smith, Busset's foreman, Arthur Hargreaves, testified that the plasterers reached the ground floor about three or four days after the walls had begun to be poured there, and followed so closely behind in applying the first coat of plaster that by the time two-thirds of the work in the stores had been done, the plastering was immediately applied to each of the remaining walls as soon as finished.

There is also the testimony of Busset. After saying that the time requisite for the walls to dry varies with weather conditions, and that there was considerable rain during the progress of the work, he stated that from two to four weeks

were ordinarily sufficient for drying under good conditions of temperature and circulation if the walls were not sealed with a scratch coat plaster, but if sealed, the drying process would take much longer. As to the ground floor, Busset testified that there was no artificial heat, and that when the plasterers began on that floor, his men were only two or three days ahead, and the plasterers followed right along. Busset said also that plaster burns and causes discoloration when applied to a wet wall of any kind, and that he cautioned Garrison and Clausen against plastering before the walls were dry. He said further that when he mentioned to Garrison that the walls in the stores were too wet to be plastered, Garrison replied: "Well, we have got to get through, we have got to get through with the building and we can't wait."

It appears also from the evidence that while the walls on the upper floors, where artificial heat was used, were only three inches thick, the stores had five-inch walls; and naturally the time requisite for drying would vary with the thickness of the walls, as well as with weather conditions and the extent to which heat was supplied.

We are of the opinion that the evidence summarized, with the reasonable inferences deducible therefrom, is amply sufficient to sustain the finding that the defects charged were due to the fact that the moisture in the walls was not allowed to evaporate before the plaster was applied.

█ Defendants contend, however, that there was a breach of warranty of fitness on Busset's part in that one of his circulars advertising his "Pacific Wall" described it as "Better than Tile" and as producing, when finished, "a practically smooth surface which can be plastered in the regular way". In respect of these matters, Busset testified that before his contract was executed, he explained to Kendall that his wall was better than one of tile in that his wall was monolithic and both more sound-proof and more fire-proof. He said also that plastering in the regular way meant plastering when the walls were dry as in the case of other walls, either by use of trowels or by spraying. He testified further that he told both Kendall and Garrison that the only difficulty he had had about his wall was its drying quality. Defendants argue that the representation that plastering could be done in the regular way should be interpreted to mean that the walls

could be safely plastered like tile walls, as soon as they were in place. Such is not, however, a rational interpretation. Kendall knew that the material for these walls had to be poured into forms, and therefore had to be mixed with about one-fourth part of water. And his own common sense apprised him that walls so constructed, and from three to five inches in thickness, would require time for drying. As the work progressed to completion, certificates for partial payments to Bussett were issued at the agreed stages; and not until after the completion payment had been made, was any objection heard. The evidence was not such as to show a breach of warranty, and it supports the finding that the walls could be plastered in the regular way.

Finally, the defendants contend that Busset's action, instituted July 10, 1928, was prematurely begun. His contract provided that the last installment of $1,000 should be paid "40 days after completion together with note for $600". Defendants interpret the word "completion" to mean completion of the entire building, the date of which was June 14th. We are satisfied, however, that the time began to run in Busset's favor from the completion of his own contract. His work having been completed on May 4th, the final installment became payable to him June 13th. Accordingly the action was not begun prematurely; and in our opinion judgment was properly awarded in Busset's favor.

In relation to the cross-defendant Clausen, the question presented is addressed more to pleading and procedure than to substantive law. The cross-complainant's motion for a new trial was granted as to Clausen without any specific grounds being stated in the order; and thereupon a motion to dismiss the action as to Clausen was immediately made while all parties were still present, and was forthwith granted. The motion was based on the ground that Clausen was not a proper party defendant, and that no cause of action was stated against him in the cross-complaint. Any objection on the ground of misjoinder should have been raised by demurrer; and as Clausen did not demur at all to the cross-complaint, that particular objection, interposed after entry of judgment, was too late to be tenable.

The determination of the cross-complainant's appeal from the order dismissing the action as to Clausen is, there-

fore, dependent on whether the cross-complaint is found to state a cause of action against him. It is accordingly necessary to turn to the cross-complaint in order to ascertain what is charged against Clausen.

After alleging the execution of the contract between Kendall and Busset on March 2, 1928, and the matters incidental thereto, the cross-complaint sets forth that on October 27, 1927, Kendall had entered into a contract with Clausen, whereby Clausen undertook to do the plastering according to the plans and specifications of the building, and that the plastering to be done by him included the plastering of the walls to be constructed by Busset. The cross-complaint then proceeds to state that after Busset's walls were completed they were plastered by Clausen under his contract; that while the specifications required the walls to be delivered with plaster perfectly white and clean and free from all defects, yet after being plastered the walls showed large blotches through the plastering, and by reason thereof had become discolored; that to make the walls perfectly white and clean and free from defects, painting would be necessary at a cost of $2,000, and that damage had been suffered in the further sum of $1,000 by reason of delay in completion of the building.

It is then alleged on information and belief that the walls as constructed by Busset contained an excessive amount of moisture, which caused coloring matter in the rice hulls to ooze out through the plaster, and that Busset claimed and represented that the discoloration was caused by negligence and carelessness of Clausen in plastering the walls, and not by reason of the construction of the walls. The cross-complainants then close with the statement that they are in doubt whether the blotches and discolorations are caused by reason of the construction of the walls or the plastering or by both, and for that reason join Clausen as a cross-defendant, "with the intent that the question as to which of the cross-defendants is liable or to what extent may be determined between the parties".

Reduced to simple terms, the story told about Clausen is that though he had made a contract to do the plastering when tile walls were contemplated, he nevertheless proceeded under the same contract when Busset's style of wall was substituted. The walls built by Busset, it is said, contained too much moisture; and when the walls had been completed

by Busset, and Clausen had thereafter finished his plastering, coloring matter from one of the ingredients of the walls oozed through the plaster causing blotches and discolorations to appear, which Busset claimed and represented were caused by negligence and carelessness on the part of Clausen, and not by any faulty construction on his own part. Under these circumstances, the cross-complainants were unable to say who was to blame; and therefore they brought both Busset and Clausen into court in order that the doubt created might be put to rest.

There is no allegation that Clausen failed in any way in performance of his contract, or that he was at all negligent or careless in fact, or that any damage or delay was due to any act or omission on his part, operating either alone or in co-operation with any breach of contract by Busset. The only reason shown for bringing Clausen into the case is that Busset was claiming and representing that Clausen, and not himself, was the one to blame. While expressing doubt whether redress should be had from Busset or Clausen or both, the cross-complainants seem studiously to have avoided making any real charge against Clausen.

 Sections 379a, 379b and 379c, which were added to the Code of Civil Procedure in 1927, are based upon like provisions adopted in New York and other states from the English rules of practice, and are designed to give greater freedom and flexibility in procedure, to the end that responsibility for the commission of a grievance or wrong may be fixed in certain classes of cases without circuity of action or multiplicity of suits. The sections should be liberally construed in furtherance of administrative efficiency, but should not be so loosely applied as to bring into court upon bare conjecture a distinct personality, who is pictured not in combination or collaboration with, or as a presumptive agent of, some other party defendant, but as a wholly independent actor. A mere doubt or suspicion is not enough to bring section 379c into play. There must be some nexus associating the defendants in an event or series of events productive of the injury complained of, under such circumstances that while there is certainty as to the alleged wrong to be righted, there is uncertainty as to which of two or more individuals implicated is legally liable therefor. As is said in *Klein* v. *Betzold*, 119 Misc. Rep. 505 [197

N. Y. Supp. 501], and repeated in *Freund Coat Corp.* v. *Lipschutz,* 135 Misc. Rep. 553 [238 N. Y. Supp. 239], the doubt contemplated in the section must be "a fair doubt as to whom plaintiff should look to right a single wrong, and not a doubt as to whether one or several persons have separately wronged plaintiff".

The rule finds its application, for example, when a contract is made through a person who is dealt with as an agent of a disclosed principal, and both the agency and the contract are afterward repudiated by the designated principal. In such case both parties may be joined in order to determine whether the principal was acting through an agent duly authorized, or the agent was guilty of a breach of warranty of authority; and redress may be sought in the alternative. (*Jamison* v. *Lamborn,* 207 App. Div. 375 [202 N. Y. Supp. 113]; *Geer* v. *Blemton Realty Corp.,* 218 App. Div. 102 [218 N. Y. Supp. 162]; *Fox Film Corp.* v. *Wirth & Hamid R. Corp.,* 231 App. Div. 37 [246 N. Y. Supp 246].)

So, also, when there are two allied corporations under one management, with almost identical names, they may be joined in an alternative action brought by a person who rendered services in various transactions, so conducted that he is unable to determine for which of the two companies part of his services was performed. (*Ellicott* v. *Archibald McNeil & Sons Co.,* 206 App. Div. 441 [201 N. Y. Supp. 500].)

Again, when goods are delivered to a carrier for transport by it and connecting carriers, and there is found to be damage or shortage on arrival at destination, a claimant in doubt as to the party responsible may join all parties potentially chargeable. In such a case, the claimant, after establishing shipment in good condition, may rest his case on the presumption arising from proof of damage or short delivery on arrival at destination, and the several carriers participating in the transportation will then be required to show what happened during carriage on their respective lines so that liability may be fixed where it belongs. (*Yatter* v. *Mathies,* 139 Misc. Rep. 26 [246 N. Y. Supp. 548]; *S. & C. Clothing Co.* v. *U. S. Trucking Corp.,* 216 App. Div. 482 [215 N. Y. Supp. 349].)

In the case at bar Busset and Clausen did their work under entirely independent contracts, and Clausen did not begin his plastering until after Busset had finished his walls.

There was thus nothing in common between them. A cause of action against Busset was pleaded in the cross-complaint; but the only ground stated for bringing in Clausen was that the cross-complainants had heard it said that he had been negligent, and they were in doubt. Mere doubt cannot, however, fill the place of a fundamental fact. In substance, the cross-complainants said: "We do not know, and we do not assert, that Clausen failed in any way to comply with his plastering contract, but maybe he did."

In that aspect the case resembles *Garrett* v. *McAllister*, 137 Misc. Rep. 721 [244 N. Y. Supp. 283], where upon motion a complaint was dismissed as to a certain defendant on the ground that no cause of action was stated against that party under section 213 of the Civil Practice Act of New York, which is identical with section 379c of our code. The defendant McAllister was an officer of his co-defendant the Royal Securities Corporation; and in his individual name McAllister had made a written contract to sell to the plaintiff stock in a certain mining company, agreeing therein to repurchase the stock at the plaintiff's option at a specified price. The action was one for damages for breach of the contract; and the Royal Securities Corporation was joined as a defendant with McAllister in a complaint setting forth McAllister's official relationship with his co-defendant, and then adding: " 'While said contract was nominally entered into by McAllister in his individual name, said contract may have so been entered into by him either for his own account, as agent for defendant Royal Securities Corporation, his undisclosed principal, or as co-adventurer with said defendant in a joint adventure. Plaintiff does not know for whose account and benefit said contract was entered into by said McAllister.' "

As to these allegations the court said that to a good cause of action against McAllister, the plaintiff had added a hypothetical cause against the corporation; and that the issue made was not which of the two defendants was liable, but whether the defendants were liable either jointly or severally. The action was pronounced, therefore, to be not in the alternative, but in the conjunctive, and to lack a statement of the essential facts needed for joinder of the corporation.

Speaking at length on the subject of pleading in the alternative, the court said: "Section 213 of the Civil Practice Act does not, in my opinion, apply to such a case. Its language indicates an intention to include only cases where the plaintiff entertains doubt as to 'which' of several persons is liable to him. It does not apply where the plaintiff's only doubt is *whether* a particular defendant is or is not liable. It does not authorize a plaintiff, who asserts a cause of action against one party concerning which no uncertainty exists, to combine with it a cause of action against others upon allegations that they also 'may' be liable. In this respect the plaintiff is not in any more favorable position here than if the suit were brought against the defendant Royal Securities Corporation alone. Even where the action is properly in the alternative, it must appear that there exists a cause of action in favor of the plaintiff against the defendants collectively considered, although the plaintiff is not able to identify among them the author of the wrong. The exoneration of one defendant will then result in establishing the liability of the other. That situation does not exist where the relief sought is not alternative. Although formal dialectical perfection in pleading is not required (*Milliken* v. *Western Union Tel. Co.*, 110 N. Y. 403 [1 L. R. A. 281, 18 N. E. 251]), the complaint here lacks the essential element of a cause of action against the Royal Securities Corporation—an allegation of facts constituting liability made either upon knowledge or upon information and belief. (Civ. Prac. Act, sec. 276.)

"In my opinion it was not the purpose of sections 211 or 213, except in an alternative suit, to alter the rule that a defendant should not be subjected to litigation unless the plaintiff is able to allege facts constituting liability at least upon information and belief. If the legislature had intended to abrogate a principle so ancient and so basic, it would have done so in unequivocal terms. Instead, by section 211 it has provided that all persons may be joined as defendants 'against whom the right to any relief is alleged to exist', thereby, as it appears to me, to have excluded the thought that a party might be joined as a defendant upon mere suspicion, except in the case of alternative relief for which provision is expressly made." (See, also, *Freund Coat Corp.* v. *Lipschutz, supra.*)

The views expressed are not to be construed to imply that a cause of action could not have been stated conjunctively against Busset and Clausen. We have been dealing merely with the cross-complaint as it is, and deem the allegations insufficient as to Clausen to afford grounds for relief against him in the alternative.

Inasmuch as no cause of action was stated against Clausen in the cross-complaint, there was no error in dismissing the action as to him.

The judgment in favor of the plaintiff S. H. Busset and the order dismissing the action as to the defendant Frank M. Clausen are each affirmed.

Knight, Acting P. J., and Cashin, J., concurred.