[Civ. No. 10604. Second Appellate District, Division One.—June 17, 1936.]

AVA MARIE MORRIS, Appellant, v. A. D. DUNCAN, Defendant; THE COUNTY OF LOS ANGELES, Respondent.

George W. Manierre and G. M. Cuthbertson for Appellant.

Everett W. Mattoon, County Counsel, and Beach Vasey, Deputy County Counsel, for Respondent.

DESMOND, J., *pro tem.*—Plaintiff appeals from a judgment entered in favor of defendant, County of Los Angeles, upon its general demurrer to plaintiff's complaint being sustained, without leave to amend. The complaint named two defendants, the county, and one Duncan, driver of an automobile, in which appellant was riding as his guest on the night of March 11, 1934.

Paragraph III of the complaint reads as follows:

"That at the said time and place the plaintiff was riding as a guest in a certain automobile of the defendant Duncan, which was owned by and being driven by the said Duncan in a northerly direction on said Del Mar avenue in the vicinity of Norwood place and toward the said wash, and at the said time and place the said defendant Duncan drove, operated and maintained the said automobile at a dangerous and excessive speed, to-wit: between thirty-five and forty miles per hour, and, seeing the small sign in the center of the street and the red lantern hanging thereon, either read the said sign and realized the import thereof, or failed and omitted to notice the said wording and the said import, which he well knew gave notice of some danger to be apprehended on the said highway, and that the disregard of such warning was likely to result in injury to his passenger, and continued to drive his said automobile in a wanton fashion with the intent to cause injury to his said passenger or in utter disregard for her life and safety past the said sign at the same rate of speed, and either saw, or should have, at a sufficient distance to have stopped the said automobile, ascertained that the roadway was in a rough, bumpy and dangerous condition northerly from said sign, and traveling over the said highway at said speed was likely to result in injury to his passenger; and saw the red lanterns hanging from the barricade and that they were suspended above the roadway and gave warning of a danger, and that he should reduce his speed in order to ascertain the nature of

the danger; that the said Duncan continued to drive his car at the same dangerous and excessive rate of speed with the intent to cause injury to his passenger or in reckless and wanton disregard for the life and safety of his passenger caused the same to collide with the said barricade, and that thereupon the said automobile continued through the barricade and dropped into the stream bed or wash with the plaintiff still riding as a passenger therein, and that the conduct of the said defendant Duncan at the said time and place constituted wilful misconduct.''

The signs and lanterns referred to are more particularly described in paragraph II, as follows:

''That on or about the 11th day of March, 1934, at or about the hour of 7:00 P. M., of said day, which was after dark, there was situated in the middle of Del Mar avenue and at a point approximately twenty (20) feet north of the northerly curb line of Norwood place as extended, a certain sign about two (2) feet square, standing perpendicularly and resting upon a small barrel and being partially illuminated by one (1) red lantern, bearing the words, 'Danger, Bridge Out'; some two hundred (200) feet northerly therefrom was located the precipitous southerly bank of the said wash and a stream bed some fifteen (15) or twenty (20 feet below the surface of the street, and some several feet south from the said bank of said wash there was located a barricade of unpainted boards resting upon wedged-shaped implements known as saw horses, and on the same barricade there was a sign reading, (Street Closed), which was being partially illuminated by one (1) or two (2) red lanterns.''

In paragraph IV, it is alleged *inter alia,* and as a general ground for establishing the county's liability that ''the signs and barricades which were maintained thereon, (Del Mar avenue) being partially obscured in that the painted letters thereon were in a dilapidated condition and covered with dirt and only partially illuminated in that the said lanterns were insufficient to clearly reveal the lettering thereon or the extent and nature of the said dangerous and defective conditions, and were insufficient to give reasonable notice to motorists using the said Del Mar Avenue at night time that the bridge was out and the highway impassable and that there was a sharp and precipitous drop from the end of the

638

street to the stream bed below and that the said barricade was insufficient in strength or size to afford any protection to motorists, . . . ''

 Respondent claims that the trial court, having the entire complaint before it, could not ignore the allegations of paragraph III in determining whether the complaint states a cause of action against the county; appellant, on the other hand, calls attention to paragraph XII, which alleges that ''plaintiff is in some doubt as to whether she is entitled to redress from the defendant Duncan or from the defendant County of Los Angeles, and both defendants have been joined herein with the intent that the question as to whether both of said defendants are, or one of them is, liable to the plaintiff and to what extent; and that the liability may be determined in this action; and that the court may award judgment to the plaintiff as against the defendants either jointly, severally, or in the alternative.''

In 1927 two new sections, identical with sections 211 and 213 of the New York Practice Act, were added to our Code of Civil Procedure. They are, respectively, section 379a and section 379c of the Code of Civil Procedure.

Invoking these sections and relying upon the allegation of doubt set up in paragraph XII of her complaint, appellant contends that, as to the county, paragraph III should be disregarded altogether, since it was drawn for the specific purpose of fixing liability upon the defendant Duncan, the allegations in paragraphs II and IV being relied upon to fix liability upon the county.

If this case had gone to trial upon the pleadings, a court or a jury conceivably might have found as a fact that the warnings and barricade posted and installed by the county were either or both *so* insufficient, as not to meet the requirement of the statute (Act 5619, Stats. 1923, p. 675; Deering's Gen. Laws 1931, p. 3052, sec. 2), that the county ''take such action as may be reasonably necessary to protect the public against such dangerous or defective condition''. It is conceivable, too, that the court or jury, notwithstanding the allegations of paragraph III, might have found defendant Duncan, as a member of the public exercising ordinary care under the existing conditions, guiltless of negligence. A judgment against the county might be predicated upon such findings.

Looking at the picture from the other angle, a jury or a court might conclude, if both defendants remain in the case, that the county had taken all reasonably necessary precautions to protect the public, in which event, in order to recover from defendant Duncan, it is apparent that his misconduct or negligence is charged appropriately in paragraph III.

Appellant and respondent both rely upon the recent case of *Busset* v. *California Builders Co.,* 123 Cal. App. 657 [12 Pac. (2d) 36], as sustaining their respective positions. We note at page 666 of that opinion, the following language: "A mere doubt or suspicion is not enough to bring section 379c into play. There must be some nexus associating the defendants in an event or series of events productive of the injury complained of, under such circumstances that while there is certainty as to the alleged wrong to be righted, there is uncertainty as to which of two or more individuals implicated is legally liable therefor. . . . " In the instant case the alleged wrong that is stated with certainty is the injury suffered by the plaintiff; the uncertainty as to which, if either, of the two defendants is responsible, will be terminated when the judgment or verdict is rendered upon trial. We believe the alleged two possible causes of the wrong are so linked together as to justify bringing the suit in its present form, under the reasoning of Judge Johnson in the Busset case, especially in view of his further statement at page 666: "Sections 379a, 379b and 379c, which were added to the Code of Civil Procedure in 1927, are based upon like provisions adopted in New York and other states from the English rules of practice, and are designed to give greater freedom and flexibility in procedure, to the end that responsibility for the commission of a grievance or wrong may be fixed in certain classes of cases without circuity of action or multiplicity of suits. The sections should be liberally construed in furtherance of administrative efficiency, but should not be so loosely applied as to bring into court upon bare conjecture a distinct personality, who is pictured not in combination or collaboration with, or as a presumptive agent of, some other party defendant, but as a wholly independent actor."

The New York case cited by respondent, *Ader* v. *Blau,* 241 N. Y. 7 [148 N. E. 771, 41 A. L. R. 1216], while having

points of similarity to the instant case, is not altogether in point. In that case a motion made by one of two defendants to strike the cause implicating him was granted, the question being, "Are the causes of action alleged in the complaint properly joined under the provisions of the Civil Practice Act?" While such a question may be raised under our system of procedure, it does not arise upon a general demurrer being interposed. We observe also. the court's statement in the Ader case: "It is not claimed that section 213 covers this action," while in the instant case, that is the exact claim, for, as we have quoted, section 379c of the Code of Civil Procedure, above noted, and invoked by plaintiff in paragraph XII of her complaint, is a duplicate of section 213 of the New York Civil Practice Act.

We find plaintiff's complaint does state a cause of action against respondent; therefore, the judgment entered under the general demurrer must be, and it is, reversed.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 14, 1936, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 13, 1936.