## KANE *et al. v.* COOK.

A judgment obtained by publication of summons against a defendant then out of the State in which the judgment is rendered, though it may be enforced against his property in that State, has no binding force *in personam,* and is a mere nullity when attempted to be enforced in another State.

As a recovery cannot be had upon such a judgment in another State, it is equally unavailing when offered in support of a plea of former recovery in an action upon the original demand.

To hold otherwise would be to hold that the validity of the judgment depends not upon the jurisdiction of the Court, but upon the manner in which it is pleaded.

The liability of a consignee to his principal, for the proceeds of sales made, accrues, in the absence of original instructions to remit proceeds on sale, on demand, or instructions to remit, and not upon receipt of proceeds by the consignee.

And where instructions to remit are originally given, but the consignee forwards no account of sales, the right of action of the principal only accrues upon his knowledge of the sales and of receipt of the proceeds by the consignee.

Nor does the fact that the principal had, at an earlier period, commenced an action in another State, where he resided, against the consignee to recover the proceeds, averring in his complaint, upon information and belief, that a sale had been made, fix that as the time when the liability accrued.

It was the duty of the consignee not only to inform his principal of the sales, but to remit the proceeds. His neglect not only deprived his principal of his funds, but kept him in ignorance of his rights.

To hold that the Statute of Limitations ran against the principal under such circumstances, would be to permit the consignee to take advantage of his own wrong, and to sustain a defence, of which, in conscience, he ought not to be permitted to avail himself.

Statutes of Limitations are intended to prevent the assertion of stale claims, which it may be difficult, or impossible, to defeat by furnishing the requisite proof, owing to the lapse of time; and also proceeding upon the presumption of payment. They are not intended to protect a party, who, by a fraudulent concealment, has delayed the assertion of a right.

APPEAL from the District Court of the Fourth Judicial District.

In January, 1853, the plaintiffs, who are residents of New York, consigned certain goods to the defendant, who is a resident of this State, with instructions that the same should not be sold at less than invoice prices. The goods were received by the defendant at San Francisco, June 20, 1853, and were sold the same day, but no account of sales was ever rendered to the plaintiffs. In October following, the plaintiffs instituted suit in the Supreme Court of New York to recover the proceeds of the consignment, made publication of the summons therein, and obtained judgment, no part of which has ever been paid. In July, 1856, a demand was made upon the defendant at San Francisco, and upon his refusal to pay over the proceeds, this suit was commenced. To the complaint, which alleges the consignment, receipt, and sale of the goods, and a refusal of the defendant to account and pay over the proceeds, the defendant

pleads the former recovery in New York, and the Statute of Limitation.

The invoice of goods, belonging one-third to plaintiffs and one-third to defendant, were shipped to the defendant, with instructions to remit proceeds of the portion belonging to plaintiffs.

The defendant never rendered any account of sales to the plaintiffs, and there is nothing to show that they ever had any knowledge of the sales until a short time previous to the commencement of this action. The plaintiff's complaint in the action brought in New York, alleges a sale upon information and belief; and contains no positive averment of the fact.

The case was tried by the Court below, without the intervention of a jury, and the Court, after finding the facts as above, gave judgment in favor of the plaintiffs for the amount claimed.

Motion for a new trial was made and overruled, and defendant appealed.

*E. D. Sawyer* for Appellant.

1. The complaint does not state facts sufficient to constitute a cause of action.

This action is upon a contract, made and entered into in New York, January 20, 1853. And section one of an act supplementary to an act defining the time of commencing civil actions in certain cases, passed May 4, 1852, is pleaded in abatement to the action.

The statute referred to is as follows :

"Section one—An action upon any judgment, contract, obligation, or liability, for the payment of money or damages obtained, executed, or made out of this State, can only be commenced within two years from the time the cause of action has accrued or shall accrue."

That the defendant sold and disposed of all of said goods in the city of San Francisco, June —, A. D. 1853.

The contract was made in New York, and the right of action accrued to the plaintiffs so soon as there was a breach of the contract on the part of defendant, or a sale of the goods.

By the English authorities, it is well settled that in *assumpsit,* the Statute of Limitation begins to run not from the time when the damage results from the breach of the promise, but the time when the breach of promise takes place. Short *v.* McCarthy, 3 B. & A., 626 ; Battley *v.* Faulkner, same, 288 ; Brown *v.* Howard, 2 B. & B., 73. In this case, the plaintiff employed, in 1808, defendant, to lay out money for him in the purchase of an annuity, and discovered in February, 1814, that the security was void, within the defendant's own knowledge, at the time of the purchase. In 1820, plaintiff sued defendant in *assumpsit,* for breach of an implied contract, to provide good security : *Held,* by Park, J., " The only question is, when the cause of action accrued, for

the statute there attached. I think the cause of action accrued the moment the defendant failed to perform that which he agreed to do."

Whatever the form of action, the breach of duty is substantially the cause of action, and the statute is a bar to the original cause of action, and all the consequential damages resulting from it.

In *assumpsit*, it is clear that if the breach of duty was beyond the six years, the Statute of Limitation is a bar, though the damage was within the time prescribed. Howell *v.* Young, 2 Carrington & Payne, 550, and cases there cited.

To apply the foregoing principles to this case, the right of action accrued to the plaintiffs at the happening of an event, to wit: the sale of the goods, which was in June, 1853; the defendant did not remit the money; then was the breach of duty, and then the right of action accrued.

2. That the decision is against law.

The defendant further plead in his answer, the Statute of Limitation, as well as a former adjudication of the same subject-matter between the same parties. All that has been said relative to the complaint not stating facts sufficient to constitute a cause of action, is applicable under this division of the argument.

The record shows that the contract was made in New York. That the defendant was to sell the goods belonging to Kane & Co., in San Francisco, for their benefit, and send them the money.

Then there was no cause for a demand, because the amount due plaintiffs was determined, and the time when it should be remitted. If the Court should think a demand was necessary for the Statute of Limitation to commence, then the appellant says a demand was made previous to October 7, 1853.

The action was not commenced here for more than two years thereafter, hence the right of action here was barred by our Statute of Limitation. Com. Laws, 819.

The same subject-matter had been heretofore adjudicated between the same parties, in the Supreme Court of the State of New York, and the plaintiffs should have brought their action upon the judgment there obtained.

That judgment is still in full force and effect in that State; and by the first section of the fourth article of the Constitution of the United States, and the act of Congress, of May 26, 1790, passed in pursuance thereof, gives that judgment, duly authenticated, the same faith and credit in this State as in the State where it was obtained. If it is conclusive between the parties in New York, it is equally conclusive here. Story Com. Con., vol. 3, § 1313.

*R. P. Clement*, for Respondents.

The defendant offered in evidence, as a bar to this action, and as a proof of a former adjudication of the subject-matter of this

suit, an exemplified copy of the record of a judgment obtained in the New York Supreme Court, by Charles I. Kane and Henry P. Hubbell, against William Cook, January 18th, 1854, by publication of summons, and without any personal service, or any appearance of the defendant, either in person or by attorney—the defendant being, at the time, a non-resident of the State of New York, and a resident of the State of California—all of which facts appeared from the record.

, The transcript was read in evidence, under objections from plaintiff's counsel, that such record was not evidence, nor any bar to this action, for want of jurisdiction in the Court of the person of the defendant. No other evidence was offered on the part of the defendant.

It was at first strongly urged, by defendant's counsel, that the New York judgment was proof of a former adjudication of the subject-matter of this suit, and a consequent bar to this action; but this position was finally abandoned, and he then contended that the New York record was proof of a demand more than two years before the commencement of this suit.

The defendant now appeals to this Court, and asks that the judgment of the Superior Court be reversed, and a judgment be entered for the defendant, on the following grounds:

1. Because the complaint does not state facts sufficient to constitute a cause of action.

2. That the decision is against law.

The first objection of counsel, seems to be based entirely on the supposition that the complaint shows a case within the statute of Limitations of this State.

It is a sufficient answer to this, that the Statute of Limitations must be pleaded, even when the cause of action appears on the face of the complaint to be out of time. Angel on Limitations, p. 468, and cases cited. But the complaint, in this case, shows no such case as counsel has supposed.

The action is for money received by the defendant, for the use of the plaintiffs, as their factor and agent, and it was necessary for us to allege and prove a demand in order to entitle us to recover.

A factor is not liable until a demand, and we had no cause of action against the defendant until a demand, and a refusal to pay. The complaint in this case alleges a demand, but it does not allege the time, and it was not necessary that it should—it must be presumed to be in time. The defendant's liability commenced at the time of the demand and refusal to pay, and not at the time of the sale, as counsel claims.

A factor or agent is not liable, until a demand or instructions to remit. (See Ferris *v.* Parris, 10 John., 285; Baird *v.* Walker, 12 Barbour, 301.) In this last case, " the goods were left for sale, in September, 1838, and the attachment was not sued out

until December, 1847, more than nine years after, and no demand was made until July, 1847; and, until that date, there was no cause of action, and the Statute of Limitations did not apply.

In the case of Cooley *v.* Betts, 24 Wend., 204, the same thing is held, and Chief Justice Bronson says that, in that case, the defendant cannot recover without showing a demand, or instruction to remit.

The case of Little *v.* Blunt, 9 Pick, 487, and the case of Codman *v.* Rogers, 10 Pick., 11, are authorities to the point, that when a demand is necessary, the statute does not begin to run until a demand is made. In the case of Clark *v.* Moody et al., 17 Mass., 145, the same thing is held. It is held further in this case, " that an agent ought not to be held to remit, at his own risk, and he cannot remit at the risk of his principal, unless in compliance with instructions." •

The case of Clark *v.* Moody, is quoted at length by Mr. Angell, in his work on limitations, and adopted by him as a true exposition of the law in such cases. The case fully recognizes the necessity of a demand in just such cases as the one at bar.

There is no evidence in this case of any demand prior to the eighteenth day of July, 1856, and there was no demand, nor any instruction to remit, before that time.

The testimony of the only witness in this case shows an agreement, on the part of the defendant, to sell the goods of the plaintiffs, in San Francisco, for their benefit, and send them the money. And defendant's counsel concludes that the defendant was to remit, without any instructions as to how. But no such conclusion can be drawn from the testimony. The only inference to be drawn from the testimony is, that the defendant was to send them the money as they might direct. This is the natural inference, and such is the legal presumption. The evidence shows no right on the part of the defendant to remit without instructions or a demand, and it was his duty to await instructions or a demand; he could not have done otherwise except at his own risk.

But appellant says, that if this Court is of opinion that a demand was necessary in this case, that then a demand is proved by the New York record, to have been made October 7th, 1853.

To this I reply, that the New York record proves no such thing. The statement of the complaint in that case is, that the plaintiffs have been informed by their agent in San Francisco, and verily believe the same to be true, that the defendant has sold and disposed of the said goods and merchandise, collected and received the money therefor, and has and still refuses to pay over what moneys he has received, or to account in any manner therefor.

The statement is made upon information received from a third party; and as proof, would be no evidence of a fact, and as an

admission, it amounts to nothing because it admits no fact. The counsel is not serious in claiming that such a statement is to be received against a party as any evidence of a fact, or as an admission of a fact. Hearsay admissions by a party amount to no more than hearsay testimony by a witness, and neither are entitled to any credit.

If a demand had been made by an agent of the plaintiffs, the defendant would scarcely have neglected to prove so important a fact: he must have known by whom the demand, if any, was made, and might have procured his testimony.

If the plaintiffs had relied upon the New York record as evidence of a demand, they must have failed; and if insufficient to prove a demand for the plaintiffs, it must be equally insufficient when used by the defendant for the same purpose.

The New York judgment is no evidence of any fact, not even of a demand, and is no merger of the original cause of action, and no bar to this action for want of jurisdiction in the Court in which it was obtained, of the person of the defendant.

Such a judgment is a mere nullity. Bissell v. Briggs, 9 Mass., 462; Starbuck v. Murray, 5 Wend., 156; Holbrook v. Murry, ib., 162; Shumway v. Stillman, 6 Wend., 453; Kilburn v. Woodworth, 5 John., 37; Robinson v. Ex. Ward, 8 John., 86; Fenton v. Randall et al., ib., 194; Story's Conflict of Laws, p. 1,002, note and cases, §§ 507, 549; Hare & Wallace's Notes to Cases of Mills v. Durye, and McElmoyer v. Cohen, 2, A. M., leading cases, 719; Whither v. Wendell, 7 N. H., 257, and Rangely v. Webster, 11 N. H., 299. These two last cases are express, that such a judgment is no bar to an action on the original cause of action.

*E. D. Sawyer*, in reply.

The counsel for respondent claims that a factor is not liable until a demand. Such is the general rule of law, to which there is exception, and this case falls within the exception. The law does not demand a vain or foolish thing to be done before a party can pursue his rights. There is reason in making a demand before suit, when goods have been consigned to an agent for sale, the accounts are unadjusted, and the commissions not agreed upon. Yet, when all of this has been done, or a particular sum is to be remitted for goods, by the agent to the principal, the rule fails, because the reason of the rule has failed.

The case of Ferris v. Parris et al., 10 Johns., 284, does not go to show a demand always necessary, only that a demand was necessary in that particular case, which is not this case.

The case of Baire v. Walker, (12 Bar.) is one under the general rule. In that case, there never had been a settlement of accounts, the goods were merely left for sale, and until a demand for the goods or the proceeds thereof, there was no default on the part of the agent.

I agree with the counsel for respondents, that the doctrine laid down in the case of Little *v.* Blunt, 9 Piers., 490, is correct. It is there held : " An action accrues to a party whenever he has a right to commence it," and from that date the Statute of Limitation commences to run.

The counsel for respondents contends that the appellant was to pay on demand. I hold the record shows, " The goods were to be shipped together, all consigned to Cook, he being instructed and agreeing to sell the one-third belonging to Kane & Co., for their benefit, for a price not less than the invoice price, and to send them the money for the same."

The counsel further says there is no evidence of a demand prior to the eighteenth day of July, 1856. The commencement of the action by plaintiffs in New York, is itself a demand, which was in October 7, 1853.

FIELD. J., after stating the facts, delivered the opinion of the Court—TERRY, C. J., and BURNETT, J., concurring.

The judgment in New York, although recovered for the same cause, is not a bar; it was rendered without personal service on the defendant, or his appearance in the action. He was at the time in this State, and the Court, therefore, had no jurisdiction of his person. The clause of the Federal Constitution requiring full faith and credit to be given, in each State, to the records and judicial proceedings of every other State, applies to the records and proceedings of Courts, only so far as they have jurisdiction. But, in every particular in which they want jurisdiction, their judgments, when attempted to be enforced out of the State where rendered, are treated as mere nullities. In the present case, the judgment was sufficient to subject to its satisfaction, within New York, property of the defendant in that State. To that extent it would be held valid, as a proceeding *in rem;* but it has no binding force in *personam,* for want of jurisdiction of the person. To the extent in which jurisdiction existed, will faith and credit be given to the judgment in this State, and no further. Thus, if personal property of the defendant had been sold under this judgment, in New York, and the purchaser had brought the property into this State, he would be protected against a claim of the defendant. The judgment, and sale thereunder, would sustain his title. But for all the purposes of establishing a personal claim against the defendant, it is a mere nullity, and it makes no difference whether valid, and in conformity with the course and practice of the Court where rendered, or otherwise.

In the leading case of Bissel *v.* Briggs, Chief Justice Parsons, in rendering the decision of the Supreme Court of Massachusetts, says :

" And upon the same principle, if a Court of any State should

render judgment against a man not within the State, nor bound by its laws, nor amenable to the jurisdiction of its Courts, if that judgment should be produced in any other State, against the defendant, the jurisdiction of the Court might be inquired into, and if a want of jurisdiction appeared, no credit would be given to the judgment.

In order to entitle the judgment rendered, in any Court of the *United States,* to the full faith and credit mentioned in the Federal Constitution, the Court must have had jurisdiction, not only of the cause, but of the parties.

"To illustrate this position, it may be remarked that a debtor, living in *Massachusetts,* may have goods, effects, or credits, in *New Hampshire,* where the creditor lives. The creditor there may lawfully attach these, pursuant to the laws of that State, in the hands of the bailiff, factor, trustee, or garnishee, of his debtor; and, on recovering judgment, those goods, effects, and credits, may lawfully be applied to satisfy the judgment; and the bailiff, factor, trustee, or garnishee, if sued in this State for those goods, effects, or credits, shall in our Courts be protected by that judgment, the Court in *New Hampshire* having jurisdiction of the cause, for the purpose of rendering that judgment; and the bailiff, factor, trustee, or garnishee, producing it, not to obtain execution of it here, but for his own justification. If, however, those goods, effects, and credits, are insufficient to satisfy the judgment, and the creditor should sue an action on that judgment, in this State, to obtain satisfaction, he must fail, because the defendant was not personally amenable to the jurisdiction of the Court rendering the judgment." 9 Mass., 468.

In the subsequent case of Hull *v.* Williams, 6 Pickering 240, which was a suit upon a judgment recovered in Georgia without personal service of the defendants, Chief Justice Parker, in delivering the opinion of the Court, says:

"If the States were merely foreign to each other, we have seen that a judgment in one would not be received in another as a record, but merely as evidence of debt, controvertible by the party sued upon it. By the Constitution, such a judgment is to have the same effect it would have in the State where it was rendered; that is, it is to conclude as to everything over which the Court which rendered it had jurisdiction. If the property of a citizen of another State, within its lawful jurisdiction, is condemned by lawful process there, the decree is final and conclusive. If the citizen himself is there, and served with process, he is bound to appear and make his defence, or submit to the consequences; but if never there, there is no jurisdiction over his person, and a judgment cannot follow him beyond the territories of the State, and if it does, he may treat it as a nullity, and the Courts here will so treat it, when it is made to appear in a legal way, that he was never a proper subject of the adjudi-

cation." See, also, Kelliwin v. Woodworth, 5 John., 37; Spencer v. Brockway, 1 Ohio, 259; Evans v. Tatem, 9 Searg. & Rawle, 252; Bo.'den v. Fitch, 15 Johnson, 140; Thurber v. Blackbourne, 1 New Hamp., 242; Rangely v. Webster, 11 New Hamp., 304.

If the judgment would not support an action by the plaintiff against the defendants, it must be equally unavailing when offered in support of a plea of former recovery in an action upon the original demand. To hold otherwise, would be to hold, that the validity, or invalidity of the judgment, depends not upon the want of jurisdiction in the Court, but from the mode in which the judgment is pleaded.

The Statute of Limitations relied upon, fixes two years from the accruing of the cause of action, as the period within which the action must be brought, and the defendant contends that the cause of action accrued when the proceeds of the sale were received by him in June, 1853, and not when the demand was made upon him to account and pay over in July, 1856. The rule in relation to factors or consignees, is well settled, that they are not liable to an action until a demand, or instructions to remit. They are not bound to take upon themselves the risk of remittance, but may await the orders of their principals. Ferris v. Parris, 10 Johns., 285; Cookey v. Belts, 24 Wendell, 203; Bird v. Walker, 12 Barbour, 300.

The counsel of the defendant does not question the general rule, but denies its application to the present case. He contends, that as the agreement of the defendant was to sell the goods and "send the money to the plaintiffs," no further instructions or demand were necessary, that it became the duty of the defendant, by this agreement, to remit immediately upon the sale, and for his failure a cause of action then accrued. A demand, or instructions to remit, are necessary to render a consignee liable, because until such demand is made, or instructions are given, he cannot know what disposition his principal may wish to be made of the proceeds; whether remitted, or paid to third parties, or held subject to his orders.

It is the duty of a consignee to render an account of his sales, but he is not bound to take upon himself the risk of remittance, nor can he throw such risk upon his principal without orders. But where, as in the present case, the remittance of the proceeds upon sale, enters into the agreement upon which the consignment is made, there can be no occasion for any further instructions or any demand to put the consignee in default. The general rule cannot apply, for the reason that the rule fails. We hold then, that the cause of action accrued in the present case upon the neglect of the defendant to remit the proceeds immediately upon the sale; and that no demand was necessary. The remittance would have been at the risk of the plaintiffs, if

made in the ordinary and customary mode by which funds were at the time transmitted to New York from California.

But the consequences do not follow which the counsel of the defendant supposed. It does not necessarily follow that the Statute of Limitations runs against the plaintiffs, from the day the proceeds of the consignment came into the defendant's hands. It appears from the evidence, and it is stated as a fact in the opinion of the Court below, that the defendant never rendered any account of sales to the plaintiffs, and there is nothing in the record which shows that they ever had any knowledge of the sales until shortly previous to the commencement of this suit. The complaint in the New York suit, alleges a sale only upon information and belief; it contains no positive averment of the fact. It was the duty of the defendant not only to inform the plaintiffs of the sales, but to remit the proceeds. His neglect not only deprived them of their funds, but kept them in ignorance of their rights.

To hold that the Statute of Limitations ran against them under such circumstances, would be to permit the defendant to take advantage of his own wrong; and to sustain a defence which, in conscience, he ought not to be permitted to avail himself of.

Statutes of Limitation are passed to prevent the production of stale claims, when, from the lapse of time, it has become difficult or impossible to furnish the requisite proof to defeat them. They proceed upon the theory that the delay, for a fixed period, to assert one's claim, raises a presumption of settlement, and that a party ought not to be afterwards harassed respecting it. They are not intended to protect a party who has by fraudulent concealment delayed the assertion of a right against him, until after the expiration of the period limited by the statute. All the exceptions specified in the statute which prevent its running, are cases where a party is not in a situation to assert fully his rights. The reason of those exceptions would seem to apply with equal force to a case of fraudulent concealment.

The question whether a fraudulent concealment of the fact, upon the existence of which the cause of action accrues, would avoid the Statute of Limitations, has frequently arisen, and in its decision there is much conflict of opinion. In Courts of Equity it is the settled doctrine that such concealment will prevent the operation of the statute, and it is only in the application of the doctrine to suits at law that the diversity of opinion exists. Booth v. Lord Warrington, 4 Bro. Parl. Cas., 163; South Sea Co. v. Wymonsdell, 3 P. Will., 143.

In Bree v. Holbuck, Douglass R., 655, which was an action of *assumpsit*, fraud, and its discovery within six years, were replied to the plea of the statute, but the case passed off upon the insufficiency of the facts as constituting fraud alleged in the replica-

Kane v. Cook.

tion; and Lord Mansfield said: "There may be cases, too, which fraud will take out of the Statute of Limitations. But here everything alleged in the replication may be true without any fraud on the part of the defendant," and the plaintiff had leave to amend, in case, upon inquiry, the facts would support a charge of fraud. In Short v. McCarthy, 3 Barn. & Ald., 626, which was an action of *assumpsit*, in which the breach alleged was negligence of the defendant, the attorney employed to make certain inquiries at the Bank of England, no replication was filed to the plea of the statute, and to the position taken by counsel that as a discovery of the negligence was not made until within the six years, the cause of action had not accrued, Mr. Justice Bayley said: "If the want of knowledge could take the case out of the Statute of Limitations, it would be competent to the plaintiff to state this in his replication." The decision in that case passed upon the insufficiency of the pleadings to sustain the action, on the ground of a new promise. There was no pretence of fraudulent concealment. In Brown v. Howard, 2 Brod. & Bing, 74, the plaintiff employed the defendant, in 1808, to invest money in the purchase of an annuity, and discovered in 1814, that the security was void within the defendant's own knowledge at the time of the purchase. In 1820, the plaintiff sued the defendant for breach of the implied contract to provide good security. The defendant pleaded the general issue and Statute of Limitations, and the Court held that the action proceeding on the contract, and not on the fraud, the statute was a good bar. There was no replication to the plea, and the case of Short v. McCarthy, was cited as "the strong case" in point, and Mr. Justice Dallas said:

"The plaintiff will not be without remedy, because he will be only nonsuited here, and may, if he deems it to his advantage, bring another action, the ground of which may be fraud, though on the propriety of such a step we give no opinion; but in Bree v. Holbuck, Dougl. 632, it is laid down that in cases of fraud the limitation only runs from the time when the fraud is discovered;" and Mr. Justice Park said, "I am of the same opinion, although this is a case of such hardship in the plaintiff that the *Court would, if it were possible, get out of the course of decisions.*"

In the Courts of New York, it is held that a fraudulent concealment is not a good answer to the plea of the statute. In the case of Troup v. The Executors of Smith, 20 Johns. 33, the question was directly raised, and deliberately considered, and it was held that the statute began to run from the time the fraud was perpetrated and not from its discovery, and that the Court was bound by the letter of the statute, and could not introduce exceptions to its operation not included in its provisions, and this decision was affirmed in the subsequent cases of Leonard v. Pitney, 5 Wendell, 30, and Allen v. Mille, 17 Wend., 202. In

both of the Carolinas and in Virginia, a similar construction is given to the statute. Miles v. Barry, 1 Hill S. C., 296; Callis v. Waddy, 2 Munf., 511.

But in several of the States the doctrine is maintained that the statute does not operate in cases of fraud until a discovery is made by the party affected. In the case of Massachusetts Turnpike Co. v. Field, 3 Mass., 201, the question was distinctly raised, and it was·held by the Court that a fraudulent concealment by the defendant that a cause of action had accrued to the plaintiff was a good replication to the plea of the statute. That was an action of *assumpsit* upon a contract for the construction of a road. The declaration contained two counts, one on the contract, and the other for money had and received. To the pleas of the statute, the plaintiff replied fraud in the execution of the work, its discovery long after the payment of the money, and the commencement of the action within six years after the discovery.

In overruling the demurrer to the replications, Chief Justice Parsons says:

" The delay in bringing the suit is owing to the fraud of the defendant, and the cause of action against him ought not to be considered as having accrued until the plaintiff could obtain the knowledge that he had a cause of action. If this knowledge is fraudulently concealed from him by the defendant, we should violate a sound rule of law, if we permitted the defendant to avail himself of his own fraud. * * * I am, therefore, satisfied, although the plaintiffs' cause of action, mentioned in the first count, literally accrued at the time when the contract was to ·have been executed, and the one mentioned in the second count accrued from the payment of the money mentioned in their second replication, yet that these causes of action were fraudulently concealed by the defendants themselves, from the knowledge of the plaintiffs long after, and that the plaintiffs brought their action within six years after the fraud was discovered. The necessary inference is, that the fraud of the defendants, disclosed in the replications of the plaintiffs, is sufficient in law to avoid the Statute of Limitations pleaded in the defendants' bars, and that the plaintiffs' replications are good."

A similar construction of the statute prevails in Maine, New Hampshire, Pennsylvania, and Indiana. Cole v. McGlathry, 9 Greenleaf, 131; Bush v. Barr, 1 Watts, 110; Mitchell v. Thompson, 1 McLean, 85; Jones v. Conway, 4 Yeates, 109.

In Sherwood v. Sutton, 5 Mason, 143, Mr. Justice Story, in sustaining, in an action on the case, the sufficiency of the replication of fraudulent concealment to the plea of the statute of New Hampshire, gave a lengthy opinion, holding that as the statute was mainly intended to suppress fraud, it should be so construed as not to encourage fraud, if it would admit of any other reason-

able interpretation, and that cases of fraud, therefore, form an implied exception to be acted upon in Courts of Law and Equity, according to the nature of their respective jurisdictions.

In this diversity of opinion on the question, we are free to adopt that rule which will best tend to advance justice, and prevent the perpetration of fraud; and we therefore hold, that in all cases a fraudulent concealment of the fact, upon the existence of which the cause of action accrues, is a good answer to the plea of the Statute of Limitations. By the system of practice adopted in this State, there is no replication to the answer. The fraudulent concealment cannot, therefore, be replied to by pleading, but it may be established by proof on the trial, and will then just as effectually avoid the plea of the statute. In the present case, the plaintiffs are residents of New York; they looked to their consignee in California to acquaint them of the sale of their goods; his delay of three years to impart any information, cannot be reconciled with honest intentions, but necessarily leads to the conclusion, that the sale was concealed for a fraudulent purpose.

The judgment must be affirmed.