[Sac. No. 4830. In Bank.—February 28, 1934.]

CLARENCE B. KIMBALL, Respondent, v. PACIFIC GAS & ELECTRIC COMPANY (a Corporation) et al., Defendants; GENERAL ELECTRIC COMPANY (a Corporation), Appellant.

Charles A. Christin, Carr & Kennedy and John E. Manders for Appellant.

Jesse W. Carter and Glenn D. Newton for Respondent.

Thos. J. Straub, W. R. Dunn and Fitzgerald, Abbott & Beardsley, as *Amici Curiae* on Behalf of Appellant.

THE COURT.—Plaintiff brings this action for personal injuries alleged to have been suffered by him while working for the Pacific Gas & Electric Company as the proximate result of the negligence of the defendant Dean Wilson, who at the time of the accident was working for the defendant and appellant, General Electric Company. In addition to Wilson and the last-named company, plaintiff joined as defendants the Pacific Gas & Electric Company and two of its employees, Milford and Dunwoody. A demurrer of the Pacific Gas & Electric Company and its employees was sustained without leave to amend, and a judgment of dismissal entered in their favor. The rights and liabilities of such dismissed parties are not involved on this appeal. At the close of the evidence, the trial court granted a directed verdict in favor of Dean Wilson on the ground that the action as to him was barred by the statute of limitations. The jury brought in a verdict against the sole remaining defendant, the General Electric Company, in the sum of $25,000, and that defendant has perfected this appeal.

The facts as shown by the record are as follows: Prior to March 6, 1928, plaintiff was employed by the Pacific Gas & Electric Company as a patrolman and lineman in Shasta County, California. In connection with this work, plaintiff worked at the various power-houses operated by that company in that district. Although there is a conflict in the evidence on this point, the plaintiff testified that for ten days to two weeks before March 6, 1928, he had been working at power-houses other than the Pit Three power-house. On that date he was ordered by his foreman to perform some

work on a relief valve located at the Pit Three power-house. This valve was situated in a pit in the floor of the power-house. While plaintiff was in the pit, defendant Dean Wilson was working directly above the plaintiff on one of the large generators. He was carrying large bolts weighing about twenty pounds each from the generator to a platform near by. One of these bolts was negligently placed on the platform by Wilson and, as a result, it rolled off, dropped about twenty feet, and hit plaintiff on the back of the head, inflicting the very severe injuries for which this action is brought. The extent and permanency of the injuries is conceded by the appellant, and no point is made that the verdict is excessive. Dean Wilson, for some time prior to the accident, had been employed by the Pacific Gas & Electric Company on work somewhat similar to that of plaintiff. Some time shortly before the accident, the General Electric Company had been engaged by the Pacific Gas & Electric Company to adjust and repair the generators at the Pit Three power-house. An employee of the General Electric Company, L. A. Fitts, was in charge of this work. Pursuant to agreement between the two companies, certain Pacific Gas & Electric Company employees were loaned to Fitts to assist him in his work, the arrangement being that the Pacific Gas & Electric Company should pay these employees, and the General Electric Company agreed to and did reimburse the Pacific Gas & Electric Company for the sums so expended. ■■■ Defendant Wilson was one of the loaned employees, and it is conceded that at the time of the accident Wilson was in fact working for and under the supervision of Fitts of the General Electric Company. It follows that the General Electric Company as special employer is chargeable with the negligence of Wilson.

Plaintiff, as already stated, was employed at the time of the accident by the Pacific Gas & Electric Company. He testified that he had known Wilson for some time prior to the accident and knew he was employed by the Pacific Gas & Electric Company; that he did not know Fitts, nor did he know that the General Electric Company was employed in working on the generators. The plaintiff in fact believed and, under the circumstances, reasonably believed that, at the time of the accident, Wilson was working for the Pacific Gas & Electric Company and that, since he had been injured

by a fellow workman he had no cause of action against a third party.

After the accident, plaintiff was taken to a hospital at Redding, where a skull operation was performed and where he remained until about June 1, 1928. During the first part of this period he was unconscious and during the entire period his mind was hazy. He was then sent to San Francisco, where a second operation was performed on his skull. He tried to return to work in October of 1928 as a watchman for the Pacific Gas & Electric Company, and did work at odd jobs requiring no physical exertion around the power plant until the fall of 1929. At that time the injury again caused him to become incapacitated and he again was compelled to undergo hospitalization. He was a patient in the hospital on several occasions until March of 1930 and, from that time until the commencement of this action on July 10, 1930, he has been convalescent. From the fall of 1929 to the trial of this action he has been unable to work and probably never will be able to do any work requiring physical effort.

Until June of 1930, plaintiff was totally ignorant of the fact that he had been injured by an employee of the General Electric Company. He accepted compensation under the Workmen's Compensation Act from the Pacific Gas & Electric Company and finally consummated a full settlement of his compensation claim against that company, which settlement was approved by the Industrial Accident Commission, in complete ignorance of the fact that he had a cause of action against the General Electric Company. At no time did the Pacific Gas & Electric Company or the General Electric Company disclose to the plaintiff or to the Industrial Accident Commission the fact that plaintiff had been injured by an employee of the General Electric Company. At no time did these companies disclose to the plaintiff or to the Industrial Accident Commission the fact that there was an agreement between the two companies to the effect that the General Electric Company should reimburse the Pacific Gas & Electric Company for one-half the sums expended by that company for compensation paid to plaintiff. That this agreement existed is conceded by appellant and is amply shown by documentary evidence. That the General Electric Company had full notice of its legal responsibility towards

plaintiff is amply shown by the record. Fitts, in charge of the repair work on the generators for the General Electric Company, within four days of the accident made a full written report of the circumstances surrounding the accident to his company. Shortly after the accident, Fitts came to San Francisco and made a full personal report of the accident and the surrounding circumstances to the officers of the General Electric Company. McCarthy, the claims adjuster of the Pacific Gas & Electric Company, advised the local manager of the General Electric Company in San Francisco of the accident and of the fact that Wilson was assisting Fitts at the time. McCarthy also informed the manager of the General Electric Company of the amount expended by his company for the care and treatment of the plaintiff. The appellant concedes that it entered into the agreement to reimburse the Pacific Gas & Electric Company for one-half the sums expended by it on plaintiff's behalf and concedes that it in fact did reimburse the Pacific Gas & Electric Company for one-half the sums expended by it on plaintiff's behalf, including one-half the amount of the final settlement. The record contains many letters between the officers of the two companies, setting forth the details of this arrangement.

From the facts already recited, it is apparent that during the year immediately following the accident plaintiff's physical condition was such that he could not make a full investigation of the facts of the accident. His wife, however, did make a determined effort to learn all of the surrounding circumstances. Shortly after the accident she wrote to Wilson, asking him to give her all the details. He replied under date of March 16, 1928, giving the details as to how he dropped the bolt, but entirely failed to mention the fact that at the time of the accident he was working for Fitts of the General Electric Company. Wilson testified at the trial that at the time of the accident he knew Fitts was working for the General Electric Company and that he at that time was working under Fitts' direction and control, but these facts he failed to disclose to plaintiff or his wife. Both Wilson and certain officers of the Pacific Gas & Electric Company called on plaintiff while he was in the hospital in Redding, but, although they fully discussed the accident, they remained entirely silent

as to the General Electric Company's connection therewith. Shortly after the accident, Mrs. Kimball taked with the manager of the Shasta Division of the Pacific Gas & Electric Company and, although he freely discussed the details of the accident, he did not mention that Wilson was at the time of the accident employed by the General Electric Company. Mrs. Kimball had three or four talks with McCarthy, claims adjuster of the Pacific Gas & Electric Company, about the accident. McCarthy had full knowledge of the details of the accident and of the General Electric Company's legal responsibility therefor. It was he, in fact, who carried on the negotiations with the General Electric Company for a settlement of his company's claim against the General Electric Company. In spite of this fact, he at no time mentioned to Mrs. Kimball or to plaintiff, Wilson's relationship with the General Electric Company, or the arrangements between the General Electric Company and the Pacific Gas & Electric Company in reference to the accident.

Plaintiff first gained the information as to the true facts in reference to the accident early in June of 1930, under rather curious circumstances. At that time, he was visiting the Volta Club House of the Pacific Gas & Electric Company and, on a desk in that club house, found a letter from McCarthy to the auditor of the Pacific Gas & Electric Company, which letter fully set forth the facts as to the accident and the facts as to the agreement between the two companies for the sharing of the expenses. Plaintiff immediately took this letter to his attorney and this action was commenced about a month thereafter. The period between the date of the injury and the date of the commencement of the action was two years and four months. Appellant pleaded and on this appeal relies on the statute of limitations, section 340, subdivision 3, of the Code of Civil Procedure, providing a one-year period of limitations in such a case. Plaintiff's complaint is based on the theory that appellant fraudulently concealed the cause of action from him and he contends that such fraudulent concealment tolls the statute of limitations. It is to be noted that the action here involved is a simple one for personal injuries based on negligence and that fraud is no part of the original action. On the threshold of this appeal we are met by the question as to whether the fraudulent concealment of the

facts upon the existence of which the cause of action depends tolls the statute of limitations in an action based on negligence. For the purposes of this part of the opinion we will assume that the complaint adequately alleges the fraudulent concealment and that the evidence supports the allegations.

■ It is the contention of appellant that the statute of limitations in this state, in cases of fraudulent concealment, can be tolled only in actions in equity and those where fraud is the basis of the original cause of action. This last contingency is expressly provided for by section 338, subdivision 4, of the Code of Civil Procedure. Appellant strenuously contends that the fraudulent concealment by the defendant of the facts upon which a tort or negligence action depends does not toll the statute. We agree with appellant that the three-year period provided for in section 338, subdivision 4, of the Code of Civil Procedure, applies only where fraud is the gravamen of the original action.

■ We are of the opinion, however, that independent of statute, a fraudulent concealment by the defendant of the facts upon which a legal common-law action is based, under the proper circumstances, tolls the statute until discovery and that upon discovery the statute applicable to that particular action (in this case sec. 340, subd. 3, of Code Civ. Proc.) then commences to run. There are cases from other jurisdictions, many of which are cited by appellant, which hold that in the absence of a statutory exception, the fraudulent concealment of the fact upon which the cause of action accrues does not toll the statute, but, in our opinion, the cases in this state and the weight of authority elsewhere support the rule that under such circumstances the statute is tolled. (See 37 Cor. Jur. 972, sec. 353, where many cases are collected.)

The earliest case discussing the problem in this state is *Kane* v. *Cook*, 8 Cal. 449, decided in 1857. This was a legal action in *assumpsit* based on defendant's failure to remit to the plaintiff the proceeds of the sale of certain goods belonging to plaintiff and consigned to defendant. The defendant fraudulently concealed the fact of the sale from the plaintiff until after the statute of limitations' period provided for such actions had expired. Mr. Justice Field rendered the opinion of the court. He pointed out that defendant's action in failing to render an account of the sale

to plaintiff kept the plaintiff in ignorance of his rights and that to hold that the statute of limitations runs under such circumstances would be to permit the defendant to take advantage of his own wrong. At page 458, the court states: "Statutes of Limitation are passed to prevent the production of stale claims, when, from the lapse of time, it has become difficult or impossible to furnish the requisite proof to defeat them. They proceed upon the theory that the delay, for a fixed period, to assert one's claim raises a presumption of settlement, and that a party ought not to be afterwards harassed respecting it. They are not intended to protect a party who has by fraudulent concealment delayed the assertion of a right against him until after the expiration of the period limited by the statute. . . .

"The question whether a fraudulent concealment of the fact, upon the existence of which the cause of action accrues, would avoid the Statute of Limitations, has frequently arisen, and in its decision there is much conflict of opinion. In Courts of Equity it is the settled doctrine that such concealment will prevent the operation of the statute, and it is only in the application of the doctrine to suits at law that the diversity of opinion exists." The court then reviews many cases from other jurisdictions and then concludes its opinion with this observation: "In this diversity of opinion on the question, we are free to adopt that rule which will best tend to advance justice, and prevent the perpetration of fraud; and we therefore hold, that in all cases a fraudulent concealment of the fact, upon the existence of which the cause of action accrues, is a good answer to the plea of the Statute of Limitations. . . . In the present case, the plaintiffs are residents of New York; they looked to their consignee in California to acquaint them of the sale of their goods; his delay of three years to impart any information, cannot be reconciled with honest intentions, but necessarily leads to the conclusion, that the sale was concealed for a fraudulent purpose." It is to be noted that in this case fraud was not the gravamen of the original action, but that the fraud consisted of the concealment of facts upon which the cause of action accrued. It is also to be noted that the statute of limitations then in effect was almost identical with the present statute, and that there

was no statutory exception based on fraudulent concealment. The court, however, read into the statute such an exception.

Another very enlightening case is *Lightner Min. Co.* v. *Lane,* 161 Cal. 639 [120 Pac. 771, 775, Ann. Cas. 1913C, 1093]. This was an action for damages caused by an underground trespass. The court exhaustively cites the cases on both sides of the question here involved and expressly follows *Kane* v. *Cook, supra.* The court does hold that such a trespass by its very nature is secret and tinged with fraud, and, therefore, did indicate that the original cause of action was tainted with fraud, but the court does not solely rest its decision on that ground. The court first concedes the rule to be that in actions at law the plaintiff's mere ignorance of the existence of the injury, or of the facts constituting such injury, or of the identity of the person liable therefor will not toll the statute. It is on this ground that the court distinguishes many of the very cases relied on by appellant in the present case. The court then cites almost a full page of authorities holding both ways on whether fraudulent concealment by the defendant tolls the statute and quotes with approval from *Kane* v. *Cook, supra,* and holds that said case decided that very point in this state in favor of tolling the statute. In discussing *Kane* v. *Cook,* the court stated: "The statute then in force contained the provision now found in subdivision 4 of section 338 concerning actions for relief against fraud, but the decision was not avowedly based upon that provision, nor was it referred to. It was put upon the general ground that the rule was applicable to any statute of limitations, although not containing any express exception in relation to fraudulent concealment. The statutes of limitations have been re-enacted without change since the decision was made. The familiar rule is that when there is a re-enactment of a statute in the same language, after a construction by the courts, the new statute is presumed to be intended to have the same effect as that previously given to its predecessor." Appellant contends that the rule of the Lightner case is limited to cases where fraud is the gravamen of the original action. There is language in the opinion tending to uphold this contention. The court did emphasize that such an underground taking by its very nature is secret and tinged with fraud, but in our opinion

the gravamen of the action was the taking, whether fraudulent or not, and the real fraud was in the concealment. As we read the opinion, the court did not base its opinion solely on the provisions of section 338, subdivision 4, of the Code of Civil Procedure, but, as an alternative ground of the opinion, held that fraudulent concealment constitutes an implied exception to the statute. The unequivocal approval of the holding in *Kane* v. *Cook, supra,* to the effect that "in all cases a fraudulent concealment of the fact upon the existence of which the cause of action accrues is a good answer to the plea of the Statute of Limitations", indicates what the real holding in the Lightner case was. Moreover, it should be noted that in *Consolidated Reservoir & Power Co.* v. *Scarborough,* 216 Cal. 698, at page 706 [16 Pac. (2d) 268], this court recognized that in the Lightner case "the gravamen of that action was an *underground* trespass upon plaintiff's mine", a purely legal action not necessarily tainted with fraud.

Appellant refers us to several California cases which it contends announce a contrary rule. Most of these cases simply hold that in actions at law plaintiff's mere ignorance of the existence of the injury, or of the facts constituting such injury, or of the identity of the wrongdoer, does not toll the statute. Such was the holding in *Lambert* v. *McKenzie,* 135 Cal. 100 [67 Pac. 6], *Lattin* v. *Gillette,* 95 Cal. 317 [30 Pac. 545, 29 Am. St. Rep. 115], *Gale* v. *McDaniel,* 72 Cal. 334 [13 Pac. 871], and *Harding* v. *Liberty Hospital Corp.,* 177 Cal. 520 [171 Pac. 98], relied on by appellant. These cases are not in point, inasmuch as they did not involve a fraudulent concealment by the defendant of the facts giving rise to the cause of action. In fact, the first three of these cases were distinguished on that very ground in the Lightner case, *supra* (161 Cal., at p. 696). The only case from this state cited by appellant at all in point is *Johnson* v. *Nolan,* 105 Cal. App. 293 [288 Pac. 78], a case in which no hearing was asked in this court. This was a malpractice case. In his first complaint, the plaintiff had pleaded the date of the alleged injury, so that the complaint showed on its face that it was barred by the statute of limitations. In his fourth amended complaint, the plaintiff omitted the date. The defendant demurred generally and specially and such demurrer was sustained by the trial

court. The appellate court held that with the date omitted the special demurrer was good and that if the date had been inserted the general demurrer would have been good. The court further held (p. 294): "In a further attempt to avoid a plea of the statute of limitations the plaintiff inserted certain allegations pleading that the defendant concealed from him certain facts regarding the plaintiff's case. However, this is not an action in equity, but is an action in malpractice. The statute of limitations which is applicable is subdivision 3 of section 340 of the Code of Civil Procedure. (*Harding* v. *Liberty Hospital Corp.*, 177 Cal. 520, 522 [171 Pac. 98].) Within the period of time so specified in that statute it was the plaintiff's duty to ascertain at his peril whether he desired to maintain this action. In *Lattin* v. *Gillette*, 95 Cal. 317, at page 320 [29 Am. St. Rep. 115, 30 Pac. 545, 546], the court quotes with approval from Wood on Limitations as follows: 'Where an attorney is sued for malpractice, the cause of action arises from the time when such malpractice occurred, and that without any reference to the circumstance whether the client knew the fact or not.' Continuing, the court cites many other authorities to the same effect. We find no error in the record." Of course, the rule is well settled that in a malpractice case the statute starts to run from the date of the injury and that mere ignorance of his injury on the part of the plaintiff is not sufficient to toll the statute. That is all that was held by the cases cited by the District Court of Appeal in its opinion. The District Court of Appeal apparently overlooked the cases heretofore cited in this opinion holding that a fraudulent concealment by the defendant of the facts upon which the action depends tolls the statute. It is not clear from the appellate court's opinion just what the facts were that were concealed by the defendant. If the facts alleged to have been fraudulently concealed were the facts upon which the cause of action accrued, and if those facts were properly alleged, then the decision is contrary to *Kane* v. *Cook, supra,* and contrary to the theory of the Lightner case, *supra,* and is hereby disapproved.

No good purpose would be served in reviewing the cases from other states. (See, however, *Texas & Pac. Ry. Co.* v. *Gay,* 88 Tex. 111 [30 S. W. 543], and *Waugh* v. *Guthrie Gas, Light, Fuel & Imp. Co.,* 37 Okl. 239 [131 Pac. 174,

L. R. A. 1917B, 1253], where the courts there involved held that the statute was tolled in a personal injury action by a fraudulent concealment by the defendant, and where the cases are exhaustively collected. We, therefore, hold that the better view and the one supported by the cases in this state and by the weight of authority elsewhere is that as far as a legal action for personal injuries is concerned, the fraudulent concealment by the defendant of the facts upon the existence of which the cause of action depends tolls the statute, and such statute does not begin to run until the discovery by plaintiff or until by reasonable diligence the plaintiff should have discovered the facts.

We turn now to a discussion of the second main point urged by appellant, and that is that the complaint herein does not allege such a fraudulent concealment as to state a case wherein the statute should be tolled. Although this is not a case falling within the provisions of section 338, subdivision 4, of the Code of Civil Procedure, we think that the same rules of pleading should apply and the same particularity should be required as is necessary to bring that section into operation. The cases under that section are quite numerous, and have firmly established the rules applicable to such cases. One of the leading cases on the subject is *Lady Washington C. Co.* v. *Wood,* 113 Cal. 282 [45 Pac. 809]. (See, also, *Victor Oil Co.* v. *Drum,* 184 Cal. 226 [193 Pac. 243] ; *Original Min. & Mill Co.* v. *Casad,* 210 Cal. 71 [290 Pac. 456, 457] ; *Consolidated Reservoir & Power Co.* v. *Scarborough,* 216 Cal. 698 [16 Pac. (2d) 268].) In *Original Min. & Mill. Co.* v. *Casad, supra,* the court, after citing and quoting from the leading cases on the subject, summarized the rules applicable to such pleading as follows: "It will be discovered upon an analysis of the above cases that there are three major allegations that must be contained in the complaint before it will be held sufficient: 1. The complaint must allege when the fraud was discovered; 2. The circumstances under which it was discovered and, 3. Facts must be alleged to show that plaintiff is not at fault for failing to discover the fraud sooner, and that the plaintiff has no actual or presumptive knowledge of facts sufficient to put him on inquiry." There can be no doubt that plaintiff herein has adequately pleaded the necessary facts in reference to requirements 1 and 2

above. enumerated. As to requirement number 3, it is our opinion that the complaint is sufficient. Paragraph VI of the amended complaint alleges plaintiff's ignorance of his cause of action and his inability to have sooner ascertained the true facts as to the liability of the General Electric Company. Paragraph VII alleges that the Pacific Gas & Electric Company furnished plaintiff with medical treatment and paid him compensation, and that at all times that company advised plaintiff that it was responsible for the accident and held itself out to plaintiff as responsible therefor, when, in truth, said company knew that the General Electric Company was responsible therefor. Paragraph IX alleges, on information and belief (the facts being peculiarly within the knowledge of appellant, such form of allegation is of course sufficient) that the General Electric Company, well knowing its responsibility to plaintiff, fraudulently and deceitfully agreed with the Pacific Gas & Electric Company that if the facts in reference to plaintiff's cause of action against the General Electric Company were concealed from plaintiff, so that plaintiff could not hold the General Electric Company responsible therefor, then the General Electric Company would pay one-half of the amount expended by the Pacific Gas & Electric Company on plaintiff's case; that thereafter the General· Electric Company did pay that sum to the Pacific Gas & Electric Company. Paragraph X alleges that, as a result of such fraudulent concealment perpetrated by defendant, plaintiff had no knowledge of his cause of action until the discovery of the letter above referred to, which letter is pleaded *in haec verba* in paragraph V of the amended complaint. The amended complaint, in some detail, alleges the inquiries made by plaintiff of the employees of the Pacific Gas & Electric Company, and of Dean Wilson, the employee of the General Electric Company, and alleges that such persons fraudulently withheld from plaintiff the information as to the General Electric Company's responsibility for the accident. In the very nature of the case that is all the plaintiff could plead. The facts were all within appellant's knowledge. We think that these allegations, when read as a whole, sufficiently comply with the rules of pleading applicable to such cases.

The last important contention of appellant is that the evidence does not show fraudulent concealment of the character necessary to toll the statute. We think that the facts already recited in this opinion are a complete answer to appellant's contention that the evidence does not show a fraudulent concealment. In this connection, we are particularly impressed by the fact that appellant concedes agreeing to reimburse the Pacific Gas & Electric Company for one-half the sums expended by the latter company on plaintiff's behalf, and concedes that it actually did reimburse that company in that amount, and that all of the negotiations in reference thereto were kept strictly secret and not disclosed either to plaintiff or to the Industrial Accident Commission. We think that there was no duty on either company to volunteer the facts of the accident to plaintiff, but we think that when they began to negotiate between themselves as to the settlement of the claim, a positive duty existed to disclose those negotiations to plaintiff. Mere silence on the part of the two companies would not constitute, under well-settled principles, a fraudulent concealment, but when negotiations took place as to a settlement of the claim, a positive duty to disclose arose. In this connection, the provisions of section 26 of the Workmen's Compensation Act are pertinent. By the terms of that section, under the circumstances disclosed in the record before us, the Pacific Gas & Electric Company, as plaintiff's employer, was entitled to recover by action from appellant, as the tort-feasor responsible for plaintiff's injuries, every dollar of expense incurred by it in caring for plaintiff. No such action was begun. If such an action had been begun, it would have fully disclosed to plaintiff appellant's connection with the accident. That section also provides that, if the employer in such an action shall recover in excess of the amount expended by it, such excess shall belong to the employee. The section expressly provides that "no release or settlement of any such claim for damages under this section shall be valid without the written consent of both the employer and employee".

We think that under this section, when the Pacific Gas & Electric Company started negotiations with the General Electric Company for a settlement of its claim, a positive duty existed on the part of the Pacific Gas & Elec-

tric Company to inform plaintiff of the negotiations. This it failed to do. It likewise failed to notify the Industrial Accident Commission of any of these facts when it compromised, with the commission's approval, plaintiff's claim against it. In thus keeping concealed from plaintiff the facts as to the accident, under the circumstances here disclosed, we think the jury was justified in inferring that the two companies were acting in concert and that a tacit agreement existed between them that the liability of the General Electric Company should be kept concealed. Moreover, the record shows that the General Electric Company was fully advised of what the Pacific Gas & Electric Company was doing, and, by reason of the privity of contract between them, it may be reasonably inferred that the General Electric Company ratified and approved what the Pacific Gas & Electric Company was doing.

On the oral argument, appellant referred us to the case of *Maryland Casualty Co.* v. *Fidelity etc. Co.*, 71 Cal. App. 492 [236 Pac. 210]. It is appellant's contention that, if the rules of law enunciated in that case be applied to the facts of the instant case, the judgment must be reversed. In that case, plaintiff was the insurance carrier of a certain employer. One of the employees of that company was injured in the course of his employment and he was thereupon sent to a hospital at plaintiff's expense. While there, the hospital attendants negligently aggravated the injury, resulting in delaying the employee's recovery and resulting in the plaintiff expending an additional thousand dollars on the employee's behalf. The defendant is the insurance carrier of the hospital. The defendant agreed with the plaintiff that it would reimburse plaintiff for this extra expenditure if plaintiff would not inform the injured employee of the injury caused by the negligence of the hospital attendants. The plaintiff agreed to this arrangement. This action was brought upon that promise of reimbursement. The injured employee was not a party to the action and was not complaining. The defendant's defense was that the agreement was illegal and void, being against public policy. The appellate court held it was not and this court, two of its justices dissenting, denied a hearing. The basis of the appellate court's opinion was that the insurance carrier of the employee's employer was not in a position of trust toward

the employee. The appellate court emphasized the fact that the employee was not before the court and not complaining. The appellate court was evidently of the opinion that neither the employer nor his insurance carrier was liable to the employee for the extra expense caused by the negligence of the hospital attendants, and for that additional reason no duty to disclose the facts to the employee existed on the part of the insurance carrier. All of these factors serve to distinguish clearly that case from the instant one. Here the employer and not his insurance carrier was a party to the concealment; here the employee is the complaining party and here the employer was clearly responsible for caring for the plaintiff. Moreover, the appellate court did not mention section 26 of the Workmen's Compensation Act. An additional reason why the Maryland Casualty case, *supra,* is not in point is that in that case there was no misleading of the employee by the telling to him of half-truths, as is the fact in the instant case. In the present case, although Wilson, a General Electric Company employee, McCarthy, Milford and other Pacific Gas & Electric Company employees talked freely with the plaintiff and his wife about the accident, every one of them carefully concealed the fact, which they well knew, that Wilson was working for the General Electric Company at the time of the accident. In this connection, it is well to keep in mind the elementary principle set forth in 12 Ruling Case Law, p. 310, section 71, as follows: ''Even though one is under no obligation to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which will materially qualify those stated. If he speaks at all he must make a full and fair disclosure. To tell half a truth has been declared to be equivalent to the concealment of the other half. A partial and fragmentary disclosure, accompanied by the wilful concealment of material and qualifying facts, is not a true statement, and is as much a fraud as an actual misrepresentation, which, in effect it is. Therefore, if one wilfully conceals and suppresses such facts, and thereby leads the other party to believe that the matters to which the statements made relate

are different from what they actually are, he is guilty of a fraudulent concealment.''

We think that the evidence clearly supports the inference that the appellant agreed with the Pacific Gas & Electric Company to keep the facts from plaintiff, and we are further of the view that such an agreement, under the facts of this case, constituted a fraud on plaintiff.

The other contentions made by appellant are so unsubstantial as not to require further comment.

The judgment appealed from is affirmed.

Rehearing denied.

Preston, J., and Langdon, J., deeming themselves disqualified, did not participate in the proceeding on rehearing.