[Sac. No. 4326.   In Bank.—July 26, 1930.]

ORIGINAL MINING AND MILLING COMPANY (a Corporation), Appellant, v. R. CASAD, Respondent.

F. W. Henderson for Appellant.

F. H. Pearson for Respondent.

THE COURT.—This appeal is taken from a judgment entered upon an order sustaining a demurrer without leave to amend to appellant's third amended complaint. The demurrer was sustained on the ground that the cause of action was barred by the statute of limitations.

The complaint is based upon the theory that it is an action in equity to terminate a constructive trust, and to compel respondent, as trustee, to return to appellant the sum of two thousand five hundred dollars, which, it is alleged, was fraudulently and unlawfully obtained by him. The transaction of which complaint is made took place in 1921. This action was commenced May 5, 1927. Plaintiff seeks to evade the statute of limitations, which would long since have barred the action, on the theory that it was commenced within three years after the discovery of the fraud.

The principal facts set forth in the third amended complaint are as follows: In the year 1921, one J. B. Hart was the secretary-treasurer of appellant. At that time respondent Casad was the general manager and local agent at Merced of the San Joaquin Light & Power Corporation. The theory is that in 1921 Hart and Casad conspired and fraudulently contrived that Hart, as secretary-treasurer of appellant, should pay to respondent out of appellant's funds the sum of two thousand five hundred dollars. In pursuance of this scheme Hart drew a check on appellant's funds to the order of Casad, individually, in the sum of two thousand five hundred dollars, and the check was cashed and indorsed by Casad individually. As part of the same transaction Hart and Casad prepared a false voucher, which was subsequently entered in the books of appellant, indicating that the two thousand five hundred dollar payment was paid to Casad, not individually, but as agent of the San Joaquin Light & Power Corporation, on account of a certain contract then existing between appellant and the power company. It further appears that prior to 1921 appellant had entered into a contract with the power company under which various payments were to be made by appellant. These payments were in varying amounts and were to be paid at different times. It is alleged that when the two thousand five hundred dollars in question was paid to Casad

all sums then due under the contract had been paid. The false voucher contained the words "Acct Power line" and the words "in full settlement for the above account" and was signed by Casad. It is then alleged that this false voucher ·was made by Hart and Casad with intent to deceive plaintiff and to induce plaintiff to refrain from investigating the true nature of the transaction; that plaintiff was so deceived and was induced to rely thereon and refrained from investigating the true nature of the transaction.

In an attempt to further excuse its failure to discover the alleged fraud, the complaint at some length sets forth that Hart had been secretary-treasurer of appellant for many years and that he had the implicit faith and confidence of the directors and stockholders of appellant, and that he had complete charge of the financial affairs of the said corporation. It is further alleged that Hart occupied a high position of trust and confidence with many other corporations and individuals, and had an excellent reputation for honesty in the community; that he was manager and cashier of a bank at Merced.

As an explanation of the time and manner in which the fraud was discovered, it is alleged that in September or October, 1926, the bank of which Hart was cashier and manager was ordered to suspend business, and upon investigation it was discovered that Hart had misappropriated and embezzled large sums from the bank; that about that time Hart committed suicide; that "plaintiff thereupon caused a thorough investigation of its financial affairs, and a thorough examination of the books and accounts kept by said J. B. Hart . . . to be made, and thereupon and not before discovered the true nature of the transaction . . . " It is then alleged that a demand was made on defendant April 22, 1927, but defendant failed and refused to return the money.

As already narrated, the trial court sustained a demurrer without leave to amend to this complaint. There can be but little doubt that the particular statute of limitations applicable to this case is that found in section 338, subdivision 4, of the Code of Civil Procedure, which provides that an action for relief on the ground of fraud or mistake must be brought within three years of the time

the cause of action accrued but "the cause of action in such a case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

The main problems thus presented are whether the facts alleged are sufficient to show no actual or presumptive knowledge of the fraud on the part of appellant, and whether the facts stated are sufficient to excuse a non-discovery of the alleged fraud at a sooner date.

Both parties rely on and concede that the rules of pleading laid down in the leading case of *Lady Washington Co.* v. *Wood,* 113 Cal. 482 [45 Pac. 809], are applicable to this case. The discussion therein contained is an excellent dissertation on the subject and has often been quoted and relied upon. We quote from that case at some length. On page 486 of 113 Cal., it is stated: "The right of a plaintiff to invoke the aid of a court of equity for relief against fraud, after the expiration of three years from the time when the fraud was committed, is an exception to the general statute on that subject, and cannot be asserted unless the plaintiff brings himself within the terms of the exception. It must appear that he did not discover the facts constituting the fraud until within three years prior to commencing the action. This is an element of plaintiff's right of action, and must be affirmatively pleaded by him in order to authorize the court to entertain his complaint. 'Discovery' and 'knowledge' are not convertible terms, and whether there has been a 'discovery' of the facts 'constituting the fraud' within the meaning of the statute of limitations, is a question of law to be determined by the court from the facts pleaded. As in the case of any other legal conclusion, it is not sufficient to make a mere averment thereof, but the facts from which the conclusion follows must themselves be pleaded. It is not enough that the plaintiff merely avers that he was ignorant of the facts at the time of their occurrence and has not been informed of them until within the three years. He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them—as that they were done in secret or kept concealed, and he must also show the times and the circumstances under which the facts constituting the fraud were brought

to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged; and, as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have actual knowledge of these facts.''

In *Phelps* v. *Grady,* 168 Cal. 73, the court in discussing the rules of pleading applicable to such cases, at page 78 [141 Pac. 926, 928], quotes from a leading case on the subject—*Wood* v. *Carpenter,* 101 U. S. 135 [25 L. Ed. 807, see, also, Rose's U. S. Notes—as follows: '' 'In this class of cases the plaintiff is held to stringent rules of pleading and evidence, especially must there be distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether by reasonable diligence the discovery might not have been before made ... A party seeking to avoid the bar of a statute on account of fraud must aver and show that he used due diligence to detect it ... The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence.' '' The principles above enunciated have been frequently applied by our courts. See, generally, *Victor Oil Co.* v. *Drum,* 184 Cal. 226 [193 Pac. 243]; *Simmons* v. *Briggs,* 69 Cal. App. 447 [231 Pac. 604]; *Gray* v. *Yarbrough,* 61 Cal. App. 724 [215 Pac. 914].

It will be discovered upon an analysis of the above cases that there are three major allegations that must be contained in the complaint before it will be held sufficient: 1. The complaint must allege when the fraud was discovered; 2. The circumstances under which it was discovered and, 3. Facts must be alleged to show that plaintiff is not at fault for failing to discover the fraud sooner, and that the plaintiff has no actual or presumptive knowledge of facts sufficient to put him on inquiry.

██ Plaintiff has ably and adequately pleaded the necessary facts in reference to requirements numbered 1 and 2, *supra.* It is in reference to requirement number 3 that the most serious question is presented, but we are of the opinion

that the facts pleaded are, if sustained by the evidence, sufficient in law to excuse the plaintiff for failure to earlier discover the fraud pleaded. The language of *Victor Oil Co.* v. *Drum*, at page 241 of 184 Cal. [193 Pac. 243, 249], seems appropriate: "The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defrauded him on the ground, forsooth, that he did not discover the fact that he had been cheated as soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on his part. The present case is not of that character."

. The judgment is reversed, with directions to the court below to overrule the demurrer.