[Civ. No. 23587. Second Dist., Div. One. Aug. 28, 1959.]

JAMES RAMEY, Appellant, v. GENERAL PETROLEUM CORPORATION (a Corporation) et al., Respondents.

Tanner, Hanson & Myers for Appellant.

P. E. Bermingham, R. H. Buchanan, R. H. Zahm, Jr., Sims Hamilton, Wise & Kilpatrick, George E. Wise and Robert J. Kilpatrick for Respondents.

FOURT, J.—This is an appeal from a judgment entered after the sustaining of demurrers without leave to amend.

The plaintiff herein was injured in an accident on April 16, 1953, and filed a complaint against General Petroleum Corporation and Pacific Drilling Control Company, John Doe and Richard Roe, on March 27, 1958. The plaintiff, in effect, sought to excuse the delay and the bar of the statute of limitations of one year upon the ground of fraudulent concealment. Demurrers by General Petroleum Corporation and by Pacific Drilling Control Company were sustained, and plaintiff was given 30 days within which to amend. A first amended complaint was filed on June 20, 1958, and thereafter, on July 1, 1958, a second amended complaint was filed.

The second amended complaint, hereinafter referred to as "the complaint," with which we are concerned, was titled "for damages and conspiracy to fraudulently conceal and defeat plaintiff's common law action for damages," and was in two counts, the first against Pacific Drilling Control Company, hereinafter called "Pacific," and the second against General Petroleum Corporation, hereinafter called "General."

A fair summary of the plaintiff's allegations in the first count of the complaint is as follows: That General is a corporation and is doing business in California; that Pacific is a copartnership doing business in California; that plaintiff was employed by General in the oil fields on December 20, 1951, when he was 26 years of age, and had just completed five years in the United States Navy, and had no previous experience in or about oil fields; that on April 16, 1953, he was working with a General oil well drilling crew of five men which crew was under the immediate direction and control of Sam Young, the driller, working on the night shift at Santa Fe Springs, California; that in addition to the drilling crew of General a "directional" man employed by Pacific was already working on the well when plaintiff and

the crew of which he was a member came to work at midnight; that the employee of Pacific assisted, directed and supervised the drilling operation that his employer Pacific had undertaken to do for General, namely, the "whipstocking" of the well; that the Pacific employee was not present at the time of the injury to the plaintiff; that at about 3 a.m. the plaintiff was standing and working at the edge of the rotary table when the driller, Sam Young, operated certain equipment whereby it was anticipated that the drill would be disengaged from the drill stem pipe; that at the time of the accident the screwed connection between the drill and the drill pipe was being broken; that a breaker is a device which encases the drill and holds it firmly in one position when the connection is broken; that no breaker was used at the time of the accident; that as a result of not using a breaker, a heavy block and tackle and drill pipe, weighing about 5 tons swung against the plaintiff and crushed him and caused the injury consisting generally of fractures of both pelvis bones, right pelvis bone split, intestines and bladder pushed upward severing the urinal channel and pulling his prostate gland loose; the plaintiff spent two months in the hospital and was rendered permanently impotent and in need of medical care for the rest of his life; that at 7 a.m. he was operated upon and was not expected to live; that Hessier, a safety engineer for General, came to the hospital at about 8 a.m. that same morning to see the plaintiff; that two days after the accident Hessier returned to the hospital, told plaintiff he had investigated the cause of the accident and had prepared a statement, which statement laid the sole cause of the accident to General's employees. The statement was read to plaintiff by Hessier, and after the correction of one error of fact suggested by plaintiff, plaintiff did, at Hessier's request sign the report as a correct written statement of the cause of the accident; that said statements made by Hessier were not true and that General knew, or should have known, that the statements were not true; that plaintiff believed the statements of Hessier and acted and relied upon them accordingly; that plaintiff returned to work for General on July 19, 1953 and has continued to work for General; that he has received workmen's compensation benefits through returned to work he learned that General had not employed General, a qualified self-insurer; that when the plaintiff first Sam Young, the driller, for a period of five days as punishment, supposedly for causing the accident and the injury

to the plaintiff; that Young told the plaintiff that he (Young) was sick about having caused the accident; that from 1953 through 1957 the plaintiff had occasion to assist in whipstocking operations and in each instance learned that the company doing the whipstocking work usually supplied its own bit or drills which generally were smaller than those used in straight oil well drilling; that General and Pacific entered into a contract under the terms of which Pacific undertook to furnish the necessary equipment, drills and breakers to fit the said drills to whipstock the well in question for General and that Pacific undertook to supervise, manage and control the slant drilling at the said well; that Pacific furnished the drills, but failed to furnish the breakers for the drills and failed to supervise the whipstocking operations at the well and thereby caused the injury to the plaintiff; that General was fully aware and knew that Pacific had failed to supervise the operation; that the agreement between General and Pacific required General to hold Pacific harmless from all tort liability resulting from Pacific's participation in the whipstocking operations; that General and Pacific conspired to conceal from plaintiff his cause of action against Pacific until the one-year period of limitation expired; that "on or about one year following the date of the accident, this being the first occasion the General Petroleum Corporation engaged in any discussion with plaintiff concerning plaintiff's claim against said corporation," one Johnson, a General claims agent, told plaintiff that he "did not have to sue until the time came when he no longer needed medical care," and that he "could recover for only medical care," and that he "could not recover any damages for his loss of manhood" because under the law that injury was not classified as a disabling injury; that the only right he had as a result of the accident and resulting lifetime injury was a right to a sum of money which would be sufficient to provide him with medical care which he would be expected to incur; further, that any officer of General would sign a letter showing the company's responsibility in this connection but that it would be better if the plaintiff signed a stipulation with General wherein the Industrial Accident Commission would be requested to review the medical bills and the future medical expenses plaintiff would incur; that plaintiff signed such stipulation which was prepared by General, forwarded to plaintiff on February 6, 1958, thereafter forwarded by him to General and thereafter filed by General with the Industrial Accident

Commission; that the stipulation provided, in effect, that plaintiff was not represented by an attorney and that the Industrial Accident Commission was requested to make findings and an award for "further medical treatment"; that the statements made by Johnson "on or about one year after the accident" were not true, that plaintiff believed the statements were true and relied upon such, that General knew that such statements were untrue; that in effect General occupied a fiduciary relationship toward plaintiff and owed him the duty to disclose the facts of the accident, and further of General's financial interest in plaintiff's not recovering damages from Pacific; that General violated its duty and thereby caused plaintiff to lose his right of action against Pacific; that in October, 1957, the plaintiff was told by a safety engineer with the Industrial Accident Commission that under the general industrial safety orders each company supplying a drill must bring a breaker which fits the drill, and that if a breaker had been affixed to the drill on the occasion of plaintiff's injury, the accident could not have happened; that General and Pacific conspired together for the purpose of fraudulently concealing from the plaintiff his cause of action for personal injuries against Pacific so that "plaintiff would never know that such a cause of action existed," thereby restricting plaintiff to his rights under the Workmen's Compensation Law against General; that the plaintiff suffered damages as a result thereof.

The plaintiff then alleges that he is in doubt as to whether he is entitled to redress from General or from Pacific and that both defendants have been joined with the intent that the question be determined in the action.

The second cause of action (against General) repeats the allegations contained in the first cause of action (against Pacific), and adds that General owed plaintiff a duty to disclose to plaintiff its financial interest in plaintiff's cause of action against Pacific, but failed to do so, and thus caused plaintiff to lose his rights against Pacific; and further alleges that "the statute of limitations has run on his cause of action alleged herein against Pacific Drilling Control Company."

Both defendants demurred to the complaint upon the ground that it did not state a cause of action. The matter was heard on July 18, 1958, and the minute entry shows that the "plaintiff states he cannot amend," and thereupon the court sustained the demurrer of each defendant without leave

to amend. A judgment, which sets forth on its face that the demurrers were heard and argued, and that "plaintiff having stated that he could not amend as to these defendants," was signed and filed on July 24, 1958, decreeing in effect that the plaintiff take nothing by reason of the action.

Appellant asserts that the complaint states a cause of action against each of the defendants. He relies mainly upon the case of *Kimball* v. *Pacific Gas & Electric Co.*, 220 Cal. 203 [30 P.2d 39]. In the Kimball case the Pacific Gas and Electric Company was having some of its machinery repaired. The Pacific Gas and Electric Company engaged the General Electric Company to do a part of the work. The General Electric Company, in doing a part of the work, borrowed Dean Wilson, an employee of Pacific Gas and Electric Company, to assist in the work of the General Electric Company, the agreement between the two companies being in effect that Pacific Gas and Electric would pay Wilson and General Electric Company would reimburse Pacific Gas and Electric for the sums so expended. Kimball thought that Wilson was an employee of Pacific Gas and Electric and that he, Wilson, was therefore a fellow workman. Kimball was seriously injured through the negligence of Wilson on March 6, 1928. Kimball was in the hospital and had his brain operated upon and returned to work in October, 1928, as a watchman and he did odd jobs until the fall of 1929, and from that time until the trial he was unable to work. While he was in the hospital certain of the officers of Pacific Gas and Electric called upon him and discussed the accident but remained silent as to General Electric's connection therewith. Mrs. Kimball, shortly after the accident talked with the claims adjuster of Pacific Gas and Electric about the accident and although he had full knowledge of the details of the accident he did not tell her of the connection of Wilson with General Electric nor of any arrangements between the companies. Kimball, thinking that Wilson was a fellow employee of his in the employ of Pacific Gas and Electric, accepted medical care and a cash settlement from Pacific Gas and Electric, without any knowledge of his claim against General Electric Company. Pacific Gas and Electric Company, in effect, acknowledged to Kimball the responsibility for the injuries to Kimball. That representation was false. Kimball did not know that he had in fact been hurt by the employee of General Electric Company until June, 1930, after he had settled with Pacific

Gas and Electric Company by way of a proceeding before the Industrial Accident Commission. At no time did either of the companies inform Kimball or the Industrial Accident Commission of the fact that Kimball had been injured by an employee of General Electric, nor was it disclosed that there was an agreement between the companies. Kimball was unable to inform himself of the actual facts of the accident because of his severe injuries. Pacific Gas and Electric represented to him that it was responsible for the injuries, and then without informing Kimball, Pacific Gas and Electric entered into an agreement with General Electric Company whereby, in effect, it was agreed that General Electric Company would pay to Pacific Gas and Electric Company one-half of the amount of money to be paid to Kimball under the provisions of the Workmen's Compensation Act. General Electric did actually pay the amount agreed upon to Pacific Gas and Electric. Kimball sued Wilson, General Electric Company, Pacific Gas and Electric Company and two employees of Pacific Gas and Electric Company. A demurrer of the Pacific Gas and Electric Company was sustained without leave to amend, and the rights and liabilities of Pacific Gas and Electric were not involved in the appeal. The jury brought in a verdict against General Electric Company for a substantial amount, and the appeal followed. One of the contentions of the appellant in that case was that the complaint did not allege such a fraudulent concealment as to state a case wherein the statute of limitations should be tolled.

The Supreme Court affirmed the judgment and said, among other things (p. 210) :

"We are of the opinion, however, that independent of statute, a fraudulent concealment by the defendant of the facts upon which a legal common-law action is based, under the proper circumstances, tolls the statute until discovery and that upon discovery the statute applicable to that particular action (in this case § 340, subd. 3, of Code Civ. Proc.) then commences to run. There are cases from other jurisdictions, many of which are cited by appellant, which hold that in the absence of a statutory exception, the fraudulent concealment of the fact upon which the cause of action accrues does not toll the statute, but, in our opinion, the cases in this state and the weight of authority elsewhere support the rule that under such circumstances the statute is tolled. (See 37 Cor.Jur. 972, § 353, where many cases are collected.)"

■ The Supreme Court also said in the opinion, among other things, the following (p. 215):

". . . In *Original Min. & Mill. Co.* v. *Casad, supra,* (210 Cal. 71 [290 P. 456]), the court, after citing and quoting from the leading cases on the subject, summarized the rules applicable to such pleading as follows: 'It will be discovered upon an analysis of the above cases that there are three major allegations that must be contained in the complaint before it will be held sufficient: 1. The complaint must allege when the fraud was discovered; 2. The circumstances under which it was discovered and, 3. Facts must be alleged to show that plaintiff is not at fault for failing to discover the fraud sooner, and that the plaintiff has no actual or presumptive knowledge of facts sufficient to put him on inquiry.' "

The Supreme Court went on to say that it was "particularly impressed" by the fact that General Electric conceded the agreement to reimburse Pacific Gas and Electric, and then said (at p. 217):

."We think that there was no duty on either company to volunteer the facts of the accident to plaintiff, but we think that when they began to negotiate between themselves as to the settlement of the claim, a positive duty existed to disclose those negotiations to plaintiff. Mere silence on the part of the two companies would not constitute, under well-settled principles, a fraudulent concealment, but when negotiations took place as to a settlement of the claim, a positive duty to disclose arose."

. ■ We must, in considering this matter, assume that all of the matters alleged in the complaint are true (*James* v. *Herbert,* 149 Cal.App.2d 741, 747 [309 P.2d 91]), and that if, upon a consideration of all the facts, it appears that the plaintiff is entitled to any relief the complaint will be held to be good. ■ Furthermore, as said in *Buxbom* v. *Smith,* 23 Cal.2d 535, 542 [145 P.2d 305]:

"While orderly procedure demands a reasonable enforcement of the rules of pleading, the basic principle of the code system in this state is that the administration of justice shall not be embarrassed by technicalities, strict rules of construction, or useless forms. (*Rogers* v. *Duhart,* 97 Cal. 500 [32 P. 570]; *Menefee* v. *Oxnam,* 42 Cal.App. 81 [183 P. 379]; *Masero* v. *Bessolo,* 87 Cal.App. 262 [262 P. 61].) Since the enactment of section 452 of the Code of Civil Procedure in 1872, it has been generally recognized that in the construction

of a pleading for the purpose of determining its effect, 'its allegations must be liberally construed, with a view to substantial justice between the parties.' (*Estate of Wickersham,* 153 Cal. 603 [96 P. 311]; *Mix* v. *Yoakum,* 200 Cal. 681 [254 P. 557]; *Terry Trading Corp.* v. *Barsky,* 210 Cal. 428 [292 P. 474]; *Von Schrader* v. *Milton,* 96 Cal.App. 192 [273 P. 1074].) No error or defect in a pleading is to be regarded unless it affects substantial rights. (Code Civ. Proc., § 475.) 'Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages.' (Civ. Code, § 3281.)''

The action against General is a fraud action. General asserts that if sufficient facts have been alleged to connect Pacific with General's fraud, then the statute of limitations has been tolled as to the plaintiff's action against Pacific, and therefore General's fraud did not damage the plaintiff; that fraud without damage is not actionable; and further that if the plaintiff has not alleged facts sufficient to connect Pacific with General's fraud, that then the plaintiff has not stated a fraud action againsct General. General also contends that under sections 3600 and 3601 of the Labor Code, the plaintiff can recover only workmen's compensation benefits as against General.

It is perfectly proper for the plaintiff to plead inconsistent causes of action in one complaint. See 39 California Jurisprudence 2d 128, 129, where it is said:

"A plaintiff may plead inconsistent causes of action in one complaint, . . .

"The plaintiff cannot be compelled to elect between inconsistent causes of action, . . . Even after the plaintiff's evidence is in, he cannot be compelled to hazard a guess as to which of the causes of action pleaded is made out.

"Where the complaint contains inconsistent counts, the plaintiff is entitled to present evidence on both and leave it to the trier of fact to decide which count the evidence sustains." (See also Code Civ. Proc., §§ 379a and 379c.)

In *Kraft* v. *Smith,* 24 Cal.2d 124, 130-131 [148 P.2d 23], it is said:

"The facts that defendants are not joint tort feasors but independent wrongdoers, and that their negligence operated successively rather than concurrently in time to produce the injury, are not vetitive of the right of joinder. The salutary

procedure afforded by section 379a, 379b and 379c of the Code of Civil Procedure is clearly intended to be available upon a showing *either* that the negligence of two or more persons, whether joint, independently concurrent, or successive, contributed proximately to cause the injury for which recovery is sought, *or* that the injury for which recovery is sought was proximately caused by the negligence of one or another or several of two or more persons and, as to each person who is not charged absolutely, that a reasonable uncertainty, requiring determination of some factual or legal issue, exists in respect to alternative or quantitative liability.'' (See *Stafford* v. *Shultz,* 42 Cal.2d 767 [270 P.2d 1] to the same effect.)

The plaintiff has alleged that he is in doubt as against which of the defendants he is entitled to recover. The question can only be determined by the evidence which will be produced at a trial. We are of the opinion that the plaintiff is entitled under the circumstances of this case to join the defendants, to allege inconsistent counts and to have the questions determined in a trial. (See *Smith* v. *City of Los Angeles,* 66 Cal.App.2d 562, 575-576 [153 P.2d 69]; *Morris* v. *Duncan,* 14 Cal.App.2d 635, 639 [58 P.2d 669]; *Lawler* v. *Gleason,* 130 Cal.App.2d 390, 394 [279 P.2d 70]; *Dallman Supply Co.* v. *Sweet,* 86 Cal.App.2d 780, 784 [195 P.2d 864]; *Joerger* v. *Pacific Gas & Electric Co.,* 207 Cal. 8, 20 [276 P. 1017]; and *Sareussen* v. *Lowe,* 125 Cal.App.2d 288, 290 [270 P.2d 27].)

General should not be permitted at the pleading stage under the circumstances in this case to assume that a jury will make any specific finding of fact including one that Pacific conspired with General to conceal from the plaintiff his cause of action against Pacific and to reason that, therefore, no cause of action has been stated against General.

Whether Pacific was a party to the fraud of General is a question of fact and it can only be determined by a trier of fact. And, whether the statute of limitations is a bar to this action will depend upon what the jury finds with reference to whether Pacific conspired with General, as alleged.

It is possible that the jury might find that Pacific was not a party to the fraud of General. In such event, the fraud, if there was such, would be entirely that of General's. If the jury did find that there was no conspiracy between Pacific and General, then it would follow that the one-year period of limitations has run on plaintiff's action against

Pacific in which event General's fraudulent concealment will have caused plaintiff the loss of plaintiff's obvious cause of action against Pacific, thereby damaging him in the amount he would have recovered from Pacific had suit been timely filed against Pacific, and would warrant a verdict against General for such amount.

█ General's next argument is, in effect, that if the plaintiff has not sufficiently pleaded a conspiracy against Pacific so as to toll the statute of limitations on his action against Pacific, that then and in such event he has not pleaded sufficient facts to state a fraud action against General. We do not believe that for the plaintiff to state and prove a cause of action for fraud against General that he must necessarily allege and prove that Pacific was a party to a conspiracy. If there was no conspiracy, General could still be held liable because of the false representations of its employees in the course of their employment which caused the plaintiff to fail to timely sue Pacific. (*Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226, 235-236 [153 P.2d 325].)

Insofar as General is concerned, one false representation, properly pleaded, would make the pleading sufficient as against the attack of a general demurrer. (*Merchants Ice etc. Co.* v. *Globe Brew. Co.*, 73 Cal.App.2d 828, 835 [167 P.2d 503]; *Neff* v. *Engler*, 205 Cal. 484, 490 [271 P. 744]; *Harris* v. *Miller*, 196 Cal. 8, 16 [235 P. 981].)

If the plaintiff cannot convince the jury that they should, as the jury did in the Kimball case, draw the inference that there existed a ''tacit agreement—between the two companies —that the liability of (Pacific) should be kept concealed,'' then Pacific will be free from the charge of conspiracy and at the same time will establish its defense of the one-year statute of limitations. That would not necessarily eliminate General from its liability for its fraud. It might even tend to prove that the fault of General damaged the plaintiff.

█ General also asserts that the plaintiff should not have relied on the fraudulent statement of its employees, that its concealment was not enough to toll the statute and that, despite what General told the plaintiff and its fraud, the plaintiff should be required to ''show why diligence would not have lead to the discovery of the right of action.'' We believe that General, having voluntarily undertaken to advise plaintiff at a time when he was still in an extremely critical condition and without legal representation concerning the

cause of the accident, as well as later with respect to the nature and extent of his legal rights and remedies, was obliged to advise him fully as to all pertinent facts, including the obligations imposed by law upon General and Pacific, respectively. We further believe that the complaint sufficiently discloses that plaintiff was not so advised, and that plaintiff was, in fact, induced to rely upon representations made on behalf of General, which representations General is alleged to have known to be false, which facts if proved to be true would warrant the trier of the facts to make a finding that General was estopped to assert the statute of limitations. ▮▮▮ It is true as said in *Schaefer* v. *Berinstein,* 140 Cal.App.2d 278, 296, 297 [295 P.2d 113]:

"When facts are susceptible to opposing inferences, whether a party had notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and whether by prosecuting such inquiry he might have learned such fact, are questions of fact. (*Tognazzini* v. *Tognazzini,* 125 Cal. App.2d 679, 687 [271 P.2d 77].)"

It might be that General can convince the jury that their employee, the plaintiff, should not have believed their agents and representatives and that he should have been on his guard with respect to whatever they might have said to him with reference to the accident.

▮▮▮ In cases involving confidential relationships, the rule requiring allegations stating the circumstances, which circumstances are relied upon by the plaintiff as excusing prior discovery of fraud, is relaxed. (*Bainbridge* v. *Stoner,* 16 Cal.2d 423, 430 [106 P.2d 423].) In *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412 [159 P.2d 958], the court points out that it is recognized that in cases involving a fiduciary relationship facts which would ordinarily require investigation may not incite suspicion, and that the same degree of diligence is not required. (See also *Rutherford* v. *Rideout Bank,* 11 Cal.2d 479, 486 [80 P.2d 978, 117 A.L.R. 383]; *Lee* v. *Hensley,* 103 Cal.App.2d 697, 704 [230 P.2d 159].) *Schaefer* v. *Berinstein, supra,* 140 Cal.App.2d 278, 296.

In this case General sought out the plaintiff and voluntarily assumed a position of trust and confidence towards the plaintiff, and plaintiff reposed trust and confidence in General.

General places great reliance upon sections 3600 and 3601 of the Labor Code which, in effect, provide that liability for the compensation provided shall be in lieu of any other liability (with certain exceptions) against an employer and

under certain enumerated conditions. The injury to be compensable under workmen's compensation must be sustained by the employee arising out of and in the course of the employment and the injury (must be) proximately caused by the employment and at the time of the injury the employee must be performing service growing out of and incidental to his employment. It appears that the "injury" sustained by the plaintiff for which workmen's compensation benefits may be collected is the personal and physical injury he sustained at about 3 a. m., April 16, 1953. The injury sustained by the plaintiff due to General's fraud, commenced on April 18, 1953, when Hessier made false representations to the plaintiff and consists of the loss, due to the running of the statute of limitations, of his cause of action against Pacific. It is clear that the fraud injury did not occur while the plaintiff was performing service growing out of or incidental to his employment when he was acting in the course of his employment. Nor, was the fraud injury "proximately caused by employment," nor did it "arise out of and in the course of the employment" in the sense that such terms are used in the Labor Code. Section 3602 of the Labor Code states:

"In all cases where the conditions of compensation do not occur, the liability of the employer is the same as if this division had not been enacted."

It is a matter of defense for the employer to allege and prove that the conditions set forth in section 3600 existed. (See *Robbins* v. *Yellow Cab Co.*, 85 Cal.App.2d 811 [193 P.2d 956]; *Conway* v. *Globin*, 105 Cal.App.2d 495 [233 P.2d 612]; *Carter* v. *Superior Court*, 142 Cal.App.2d 350, 354 [298 P.2d 598]; also see *Popejoy* v. *Hannon*, 37 Cal.2d 159, 173-174 [231 P.2d 484]; *Gillespie* v. *Rawlings*, 49 Cal.2d 359, 361 [317 P.2d 601].)

In *San Francisco Unified School Dist.* v. *California Building Maintenance Co.* (1958), 162 Cal.App.2d 434 [328 P.2d 785], the school district brought action against the maintenance company to recover amounts paid by the school district in satisfaction of judgments against it in favor of the companys' window washer, who was injured in a fall while washing a defective window in the school, and for the amount expended by the school district in defending action against it, on the ground that the company breached the contract with the school district providing that the company was responsible for payment of any damages resulting from its

operations because the company allegedly permitted the windo washer to wash a window without adequate safety equipment.

The maintenance company contended that it could not be liable to the school district because the workmen's compensation act provided the exclusive remedy of an injured employee against his employer and that if the employer were compelled to pay the school district the damages paid by that district to the injured employee, then the employee would be indirectly recovering from his employer in a tort action. The court said (p. 443):

"Thus, we come to the basic problem here involved. The school district, as a matter of law, was negligent in failing to supply a safe place in which Dubay was to work. The maintenance company contracted and agreed to wash the windows in a certain way. The windows were washed in a manner in direct violation of this contract. Was the trial court correct in holding that, as a matter of law, the maintenance company is not liable for damages for breach of its contract, the damages obviously being the amount that the school district was obligated to pay to Dubay and to the workmen's compensation insurance carrier?"

It was held that the school district could seek indemnity from the maintenance company, even though the exclusive remedy of the injured employee against the company was under the compensation act even in spite of the fact that the effect of permitting the school district to recover from the company was indirectly to permit the injured employee to recover from the company in a tort action. By analogy, we think the workmen's compensation act should not be available as a defense in a fraud action instituted by an employee against his employer under the peculiar circumstances alleged herein, to wit: where the fraud consists of misrepresentations by the employer to the employee which induced the employee to fail to discover that his personal injuries were sustained by reason of the wrongful conduct of a third party against whom the employee had recourse, and where the fraud further consists of misrepresentations by the employer to the employee to the effect that he did not have to sue until he no longer needed medical care, and to the effect that he had only one claim which was for medical expenses which he would incur in the future.

Surely, the Legislature never intended that an employer's

fraud was a risk of employment. Further, we do not believe that an injury caused by the employer's fraud arises out of the employment nor is it proximately caused by the employment as those terms are used in the statute.

Pacific asserts, in effect, that there is no allegation that Pacific did anything other than remain silent, and that silence alone is not a fraud. Considerable is also said by Pacific in attempting to distinguish this case from the Kimball case and thereby avoid being in the position in which General Electric found itself in the Kimball case. We think a close reading of the Kimball case and a comparison thereof with the allegations in this case lead to the conclusion that the Kimball case is not distinguishable from the present case to Pacific's advantage.

It was said in *Greenwood* v. *Mooradian*, 137 Cal.App. 2d 532, 537 [290 P.2d 955]:

"The argument is that acts constituting the conspiracy, as well as those inflicting a wrong pursuant thereto, must be alleged. The cases are to the contrary. In *California Auto Court Assn.* v. *Cohn*, 98 Cal.App.2d 145 [219 P.2d 511], the allegation of fact of the conspiracy itself was no more detailed than the one at bar. At page 149 this division of this court rejected the claim of insufficiency of the allegation, saying: 'As to the necessity of interference by unlawful action respondents contend the complaint contains a bare allegation of conspiracy and is therefore insufficient. The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. The cause of action is the damage suffered. . . . The complaint contained allegations of acts of the respondents in detail and was not confined to a "bare" allegation of conspiracy.' The last quoted language referred to acts alleged to have been done pursuant to the conspiracy and in effectuating an actionable wrong."

. . . . . . . . . .

"The view that defendant—must be shown to have done some overt and independently tortious act in order to be liable as a conspirator is a mistaken one. In *California Auto Court Assn.* v. *Cohn, supra,* 98 Cal.App.2d 145, at page 149, the court also said: 'Each participant in the wrongful act is responsible as a joint tort feasor for all damages ensuing from the wrong, regardless of whether or not he was a

direct actor and of the degree of his activity. (*Mox Inc.* v. *Woods*, 202 Cal. 675 [262 P. 302].) ██ Furthermore, because of the inherent difficulty in proving a conspiracy, it has been held that a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. (*Anderson* v. *Thacher*, 76 Cal.App.2d 50, 72 [172 P.2d 533].)' *Mox Inc.* v. *Woods, supra,* at pages 677-678: 'In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tort feasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity. (Citing cases.) A plaintiff is entitled to a joint recovery of damages against such defendants as he can show have united or cooperated in inflicting a wrong upon him. (Citing cases.) ██ The advantage gained in charging a conspiracy is that the act of one during the conspiracy is the act of all if done in furtherance thereof, and thus defendants may be held liable who in fact committed no overt act whatsoever and gained no benefit therefrom.' ''

In *Agnew* v. *Cronin*, 148 Cal.App.2d 117, 129 [306 P.2d 527], it was said:

''. . . each participant is responsible as a joint tortfeasor for the ensuing damage regardless of whether he was a direct actor or the degree of his activity.''

The allegations of conspiracy are to be aided by the other allegations of the complaint. (*Schessler* v. *Keck*, 125 Cal. App.2d 827, 832-833 [271 P.2d 588].) In this case the allegations of conspiracy are aided by the hold harmless agreement, by facts showing Pacific's responsibility for the accident, and by the fraudulent statements of General's employees, and by the failure to present full information to the Industrial Accident Commission. Inferences need not be pleaded. (Code Civ. Proc., § 426, subd. 2.) The ''tacit agreement'' giving rise to the conspiracy is a matter of inference. (*Kimball* v. *Pacific Gas & Elec. Co.*, 220 Cal. 203, 218 [30 P.2d 39].) ██ The law recognizes that persons who are engaged in a conspiracy do not by the nature of things leave a recognizable trail of their activities if they can avoid it. ██ As said in *Johnstone* v. *Morris*, 210 Cal. 580, 590 [292 P. 970]:

''. . . In cases of conspiracy to defraud it is not to be expected that direct evidence of the conspiracy can be secured, because such evidence could usually only be secured

in the event one of the conspirators confessed. The jury may infer the conspiracy from all the circumstances, and if the inference is a reasonable one it will not be disturbed on appeal. These principles have repeatedly been recognized by this court. In *Revert* v. *Hesse,* 184 Cal. 295, at 301 [193 P. 943, 946], this court, quoting from a Georgia case, said:

" 'The law recognizes the intrinsic difficulty of proving a conspiracy. The allegations with reference to conspiracy are treated as matters of inducement leading up to a more particular description of the acts from which conspiracy may be inferred. . . . The conspiracy may sometimes be. inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances. . . .' " (See also *Biggs* v. *Tourtas,* 92 Cal.App.2d 316, 322 [206 P.2d 871] ; *Dandini* v. *Dandini,* 120 Cal.App. 2d 211, 214 [260 P.2d 1033] ; *Schessler* v. *Keck, supra,* 125 Cal.App.2d 827, 833; *James* v. *Herbert, supra,* 149 Cal.App. 2d 741, 747, 750.)

 The statute of limitations does not begin to run in the case of a conspiracy to conceal until a disclosure of the cause of action is made, thereby terminating the wrongful concealment.

In our view there should be no reward to General for its alleged fraud. The statute of limitations was adopted in the first instance to protect defendants against the stale claims of dilatory plaintiffs. It would be unconscionable under the alleged facts of this case to hold that plaintiff is unable to proceed with his action, against the very parties who affirmatively misled him, because his action was not commenced within the time prescribed by statute.

The judgment is reversed and the matter is remanded to the trial court with instructions to overrule the demurrer and allow the respondents a reasonable time within which to answer the second amended complaint on file herein.

White, P. J., and Lillie, J., concurred.

The petition of respondent Pacific Drilling Control Co. for a rehearing was denied September 24, 1959, and its petition for a hearing by the Supreme Court was denied October 20, 1959. White, J., did not participate therein.