William GAMBRELL, Plaintiff-Appellant,

v.

KANSAS CITY CHIEFS FOOTBALL
CLUB, INC., et al.,
Defendants-Respondents.

No. KCD 29288.

Missouri Court of Appeals,
Kansas City District.

Jan. 30, 1978.

H. George Lafferty, Jr., Kansas City, for plaintiff-appellant.

Thomas A. Sweeny, William J. Burrell, Kansas City, for defendants-respondents.

Before SHANGLER, P. J., WASSER-STROM, J., and MARTIN and CLARK, Special JJ.

WASSERSTROM, Judge.

The question for determination is whether plaintiff's present suit against his former employer for fraud and deceit is precluded by the Workmen's Compensation Act. The trial court held in the affirmative. We affirm.

Plaintiff, a professional football player, entered into negotiations to play for the Kansas City Chiefs Football Club, Inc. He reported for physical examination to the team doctors, Elfeldt and Miller, and those doctors reported him physically fit to play. A contract was signed between plaintiff and the Kansas City Chiefs on June 17, 1974.

On August 17, 1974, plaintiff received severe physical injuries when tackled in an exhibition football game with the Los Angeles Rams. He filed claim for that injury before the Missouri Compensation Commission in November, 1974, and he received an award in that proceeding in the sum of $5,250, which the Kansas City Chiefs paid on April 9, 1976.

During the pendency of the compensation proceedings, plaintiff filed the present lawsuit against the Kansas City Chiefs and Doctors Elfeldt and Miller. Count I alleged that sometime in July, 1974, Elfeldt and Miller conducted physical examinations of plaintiff on behalf of the Kansas City Chiefs to determine his physical fitness to play professional football and that as a result of those examinations they represented to plaintiff that his physical condition was good and that he was fit to play; that those representations were false in that plaintiff at that time was disabled as a result of prior injuries and those preexisting disabilities rendered him unfit to participate in professional football and would subject him to great risk of serious and permanent physical injury; that the defendant doctors and the defendant Kansas City Chiefs through them knew or should have known that the representations in question were not true; that the misrepresentations were material and made with the intent that plaintiff rely upon them and enter into a contract with and perform as a player for the Kansas City Chiefs; that plaintiff was ignorant of the falsity of those representations and he had a right to rely and did rely thereon. Count I further alleges that the injuries received by him in the Rams football game on August 17, 1974, either would not have occurred had he been physically fit or were much more severe in extent than he would have received had he been physically fit to play football. This count then proceeds to allege as follows:

"That as a direct and proximate result of the aforedescribed wrongful acts of the defendants, the plaintiff suffered an aggravation of a pre-existing injury in his back, neck, spine, and the muscles, tendons, nerves, vertebrae, tissues and blood vessels attached thereto and connected therewith. He suffered a severe and lasting shock to his central nervous system resulting in the loss of his natural rest and sleep. The plaintiff has suffered from great physical pain and mental anguish. The plaintiff will be required to undergo hospitalization and surgery in the future for the aforesaid injuries. The plaintiff has sustained a severe and permanent disability and can no longer participate in his profession as a football player nor can he participate in any other normal physical activity. The plaintiff has suffered a great loss of wages and will suffer a loss of wages in the future because of the aforesaid injuries."

Under Count I, plaintiff prayed actual damages of $250,000. Under Count II, he claimed punitive damages of $1,000,000. In Count III, he alleged conspiracy by the three defendants to make the misrepresentations referred to in Count I, for which he prayed actual damages of $250,000; and in

Count IV, he prayed punitive damages on account of the conspiracy in the sum of $1,000,000. Count V claimed breach of contract against defendant Kansas City Chiefs alone in the sum of $19,642.81.

The Kansas City Chiefs filed separate answer and followed up with a motion for summary judgment on Counts I through IV, supported by documents reflecting all of the Workmen's Compensation proceedings. The Kansas City Chiefs urged in support of their motion that plaintiff's damages were all the result of an accidental injury covered by the Workmen's Compensation Act and for which he was fully compensated by the award of the Workmen's Compensation Commission, and that plaintiff's rights under the Compensation Act are exclusive under the provisions of Section 287.120. (All statutory references are to RSMo 1969). The trial court sustained that motion and made the judgment final for purposes of appeal under Section 512.020.

On this appeal, plaintiff attacks the judgment sustaining the motion for summary judgment on two fronts. He contends, first, that his claim in this case is not based on the accident of August 17, 1974, but rather upon the fraud and deceit which occurred earlier. He contends that it is only the claim for accidental injury which is barred and that his cause of action for fraud and deceit does not fall within nor can it be barred by the Workmen's Compensation Act. As his second contention, plaintiff says that a material issue of fact (namely whether he was an employee at the time of the medical examinations) remained unresolved, and for that reason summary judgment should not have been granted.[1]

An appropriate starting point for a discussion of plaintiff's first and major proposition is the underlying philosophy of Workmen's Compensation legislation. This legislation rests on the foundation concept of the social desirability of giving employees a sure and speedy means of compensation for injuries suffered in the course of employment without the necessity of proving fault on the part of the employer. By way of exchange consideration to the employer, these Acts provide compensation in only a relatively modest amount and protect the employer by making that compensation exclusive of all other remedies. This latter consideration is reflected in Section 287.120 of the Missouri Act which provides that the employer shall furnish compensation under the Act "and shall be released from all other liability therefor whatsoever" and that "[t]he rights and remedies herein granted to an employee, shall exclude all other rights and remedies * * *."

This exclusivity, however, is qualified by a rule accepted in most jurisdictions that the Act bars common law suits for only those damages covered by the Act and for which compensation is made available under its provisions. This rule is followed in Missouri. *Harryman v. L & N Buick-Pontiac, Inc.*, 431 S.W.2d 193 (Mo.banc 1968). Thus, under this rule the employee is still free despite the Act to bring suit at common law for wrongs not comprehended within the Workmen's Compensation Act, such as false imprisonment and defamation. A considerable number of cases holding to this effect are collected in the annotation "Workmen's Compensation Provision as Precluding Employee's Action Against Employer for Fraud, False Imprisonment, Defamation, or the Like", 46 A.L.R.3d 1279.

Most of the cases relied upon by plaintiff fall in this category. Thus, *Skelton v. W. T. Grant Company*, 331 F.2d 593 (5th Cir. 1964) was an action for false arrest where the employee claimed damages for embarrassment and humiliation. *Powers v. Middlesboro Hospital*, 258 Ky. 20, 79 S.W.2d 391 (1935) was an action for false imprisonment where the employee alleged damages by way of fright, shock and physical pain and anguish. *Braman v. Walthall*, 215 Ark. 582,

---

1. Plaintiff's brief contains a third point under which he argues defensively that the compensation award does not foreclose this suit by reason of res judicata or collateral estoppel. The judgment does not require the aid of either of those doctrines, and this point by defendant therefore need not be discussed.

225 S.W.2d 342 (1949) was a suit for slander in which the employee alleged damages for mental anguish, humiliation and damage to reputation. In each of those cases cited by plaintiff, and others like them, the damages for which the employee sought recovery were other than (or at least only to a very slight extent) physical injuries to the body of the type intended to be compensated by the pattern of the Workmen's Compensation Act. See Larson's Workmen's Compensation Law, Sec. 68.30, p. 13–18.

The application of the rule just mentioned becomes much more difficult in a case by an employee for fraud and deceit where the plaintiff employee alleges that some fraud on the part of the employer interrelated with a bodily injury suffered by the employee in the course of his employment. Larson, a leading authority on the subject of Workmen's Compensation, discusses this problem at Section 68.32, p. 13–22, of his work where he cites and discusses decisions on this question from many jurisdictions and summarizes as follows:

> "The cases involving allegations of deceit, fraud, and false representation can best be sorted out by distinguishing those in which the deceit precedes and helps produce the injury, and those in which the deceit follows the injury and produces a second injury or loss."

Representative of the latter class of cases, which are not precluded by the Workmen's Compensation Act, is *Ramey v. General Petroleum Corporation*, 173 Cal.App.2d 386, 343 P.2d 787 (1959), a case cited and relied upon by plaintiff in this case. In *Ramey*, the plaintiff employee was caused by misrepresentations to wait beyond the period of limitations before bringing suit against a third party defendant, and he sued both his employer and the third party for conspiracy to defraud him. The employer's defense of exclusivity of the Workmen's Compensation Act was held not effective in its favor "under the peculiar circumstances alleged." As pointed out by Larson, the court in *Ramey* "sharply distinguished between the two injuries involved; first, the personal and physical injury compensated by the act; and second, the fraud injury destroying a

valuable right of action against the third party by causing it to lapse because of the running of the statute of limitations." Larson explains that cases falling within this group are not precluded by the Workmen's Compensation Act because "the alleged deceit has acted, not upon plaintiff's physical condition, but upon his legal rights under the compensation act."

■ The case at bar does not fall within the category just discussed but rather within Larson's first category "in which the deceit precedes and helps produce the injury." As to this category, which represents the situation with which we are dealing here, Larson states at page 13–22: "In the first category, a tort action has usually been found barred, since the deceit, so to speak, merges into the injury for which a compensation remedy is provided." Larson's conclusion is persuasive and is supported by his analysis of the cases on the subject. A repetition of that full analysis in this opinion would be redundant. Special attention nevertheless should be called to *Bevis v. Armco Steel Corporation*, 86 Ohio App. 525, 93 N.E.2d 33 (1949), where the Syllabus by the court states:

> "In an action for false representation and fraud, brought by an employee against his employer, where the damages charged in the petition are those for which under the Workmen's Compensation Act the employee may have an award, and where such employee alleges that he has availed himself of such provisions and obtained an award of compensation, such petition is subject to demurrer."

That official court ruling is amplified by Judge Ross' concurring opinion (referred to with approval in *Greenwalt v. Goodyear Tire & Rubber Co.*, 164 Ohio St. 1, 128 N.E.2d 116 [1955]) as follows:

> "It seems clear that such actions as libel, slander, malicious prosecution, false representations, and an action for fraud may still be maintained, although the relationship of employer and employee exists, and the facts sustaining such cause of

action might involve the incidents of employment.

"In the instant case, a cause of action for false representations is stated in part. The difficulty with the case of the plaintiff is that the damages alleged fall within the classification definitely provided for by the Workmen's Compensation Act, and the plaintiff, therefore, fails to allege other damages for which the law now recognizes a remedy by compensation.

"The injury charged, as the result of the defendant's fraud, is the exact injury for which he is allowed and did claim compensation under the Workmen's Compensation Act.

"The law does not furnish a double satisfaction for a wrong. The plaintiff claims in his pleading that he was induced to continue in his employment by reason of the fraud of his employer and suffered certain injuries thereby. Those injuries are the ones for which he claimed and was awarded compensation. If he were permitted to recover in the instant action, a double satisfaction for the same injury would follow.

"I also wish to be understood as excluding from the rule of abrogation a situation where, by reason of the fraud of the employer, the employee is caused to forego his remedy under the Workmen's Compensation Act. The damage in such case would not be met by compensation under that Act. There would not, as in the instant case, be a double satisfaction."

Another felicitous statement of the same view was expressed in *Sarber v. Aetna Life Ins. Co.*, 23 F.2d 434, l.c. 435 (9th Cir. 1928), where an employee brought action for deceit based upon the employer's insurance company falsely representing that metal fragments had been removed from the plaintiff employee's leg, by reason of which the plaintiff was caused to suffer continued pain, inability to work and medical expense. The court held that the damages claimed could be recovered under the Compensation Act and that remedy was exclusive:

"For these reasons, we are of opinion that the original accident was the proximate cause of the damages claimed in this action, and the state Compensation Act provides what the Legislature has deemed just and adequate compensation for all such injuries. If we are correct in this conclusion, there is little room to doubt that the remedy thus provided is exclusive of all other remedies, common-law or statutory, as between the employee, on the one hand, and the employer and the insurance carrier, on the other, and that the exclusive provisions of the Compensation Act cannot be evaded by bringing an action in some other form or under some other name."

■ The conclusion that plaintiff's present common law action is precluded by the Workmen's Compensation Act remains valid despite the fact that plaintiff in Counts II and IV prays for punitive damages. True enough, the Act makes no provision for punitive damages, but that omission was intentional and does not prevent the compensation remedy from being exclusive. This point is well treated in *Roof v. Velsicol Chemical Corporation*, 380 F.Supp. 1373, l.c. 1374 (D.C.Ohio 1974) where the court held:

"The Ohio courts have apparently recognized no exception for actions demanding punitive damages only.

"Nor would such an exception be consistent with Ohio Workmen's Compensation Act. This Act provides statutory rights to relatively speedy and moderate reimbursement to workmen for injury sustained in work related activities. These rights were substituted for all previously available remedies, on the theory that partial reimbursement is more socially desirable than the uncertainty of litigation for full compensation in such cases. See *State ex rel. Crawford v. Industrial Comm.*, 110 Ohio St. 271, 143 N.E. 574; 58 O.Jur.2d Workmen's Compensation Sec. 3.

"To allow both compensation under the Workmen's Compensation Act and an action for punitive damages would clearly

frustrate Ohio's policy of partial reimbursement. Therefore, the Court finds that Ohio courts would not recognize an action for punitive damages where an action for compensatory damages for the same injury or disease cannot be maintained.

"It appears from the record that defendant Nease was a complying employer at all times relevant herein and therefore Ohio's rule of non-liability protects it from said claims for punitive damages."

See also *Wooddell v. Washington Steel Corporation*, 269 F.Supp. 958 (D.C.Pa.1967).

 Nor does plaintiff's allegation of conspiracy require any different result. No matter how his cause of action be framed, his claim ultimately reduces to one for bodily injuries for which compensation can be and actually has been had by plaintiff under the Workmen's Compensation Act.

Turning now to plaintiff's second contention dealing with the propriety of summary judgment relief, his objection lacks merit. The pleadings do leave an unsatisfactory ambiguity as to whether the physical examinations by Doctors Elfeldt and Miller preceded or came after June 17, 1974, the date of the employment contract. However, resolution of that factual question is unimportant for the purpose of this case. Even if it be assumed that both examinations preceded the contract, that does not prevent the Workmen's Compensation Act from being applicable.

Plaintiff's argument runs that this factual question is material because there would have been no employment relationship and hence no Workmen's Compensation coverage unless plaintiff had a contract of employment at the time of the two examinations. That argument is fallacious because the important date for determining employment is August 17, 1974, the date of the injury, not any date in June or July when the examinations took place and when misrepresentations are alleged to have been made.

As has already been discussed in this opinion, the key to whether the Workmen's Compensation Act precludes a common law right of action lies in the nature of the injury for which plaintiff makes claim, not the nature of defendant's act which plaintiff alleges to have been responsible for that injury. In this case, as has already been shown, the damages for which plaintiff seeks recovery herein are accidental bodily injuries squarely within the ambit of the Workmen's Compensation Act. As stated by Larson, the fraud and deceit in June or July, if any, became merged in the physical injuries which occurred in August, 1974. By that time, plaintiff unquestionably had become an employee under written contract of employment.

The trial court's ruling sustaining the grant of summary judgment was correct and is therefore affirmed.

All concur.